**Petition for Naturalization of Rosario Cruz BAUTISTA, Petition No. 663–P–1170.**

**Naturalization Order No. 64.**

District Court of Guam,
Agana Division.
May 2, 1960.

As Amended May 23, 1960.

Gordon H. Homme, Jr., U. S. Atty., Dist. of Guam, Agana, Guam, for petitioner.

Respondent pro se.

GILMARTIN, District Judge.

This is a motion by the Officer in Charge, U. S. Immigration and Naturalization Service, Agana, Guam, requesting that the petition for naturalization of Rosario Cruz Bautista be denied. The full administrative file of the Immigration and Naturalization Service relating to the petitioner, including verbatim transcripts of the various administrative proceedings, have been made available and have been carefully studied by this Court.

At the outset, it may be noted that there is no dispute as to the material facts. The only issues before this Court are issues of law:

(a) Whether the Petitioner became a citizen of the United States under Section 307 of the Immigration and Nationality Act, 8 U.S.C. [A. §] 1407(b).

(b) If so, whether the Petitioner lost her citizenship of the United States at any time.

In her petition for naturalization, Rosario Cruz Bautista, referred to as the petitioner, alleges that she was born in Santa Cruz, Agana, Guam on September 30, 1905; that she married Pedro S. Bautista on July 16, 1926 at Agana, Guam; that her husband, Pedro S. Bautista, was born at Imus, Cavite, Philippine Islands on February 22, 1885; that her husband is deceased; that she was lawfully admitted for permanent residence in the United States at Agana,

Guam under the name of Rosario Cruz Bautista on September 19, 1951 on a Pan American Airways plane; that her father, Sylvestre Cruz Cruz, was a citizen of the United States by virtue of the Organic Act (of Guam), 48 U.S.C.A. § 1421 et seq.

On February 16, 1956, at the office of Immigration and Naturalization Service at Agana, Guam, the petitioner testified, among other things, that her husband, Pedro S. Bautista, was born in the Philippines and served in the United States Navy; that he died in the Philippines on April 10, 1945; that the petitioner went to the Philippines in 1929 to join her husband and returned to Guam on or about September 20, 1951; that the petitioner did not at any time vote in the Philippines and did not at any time work in the Philippines; that she did not at any time serve in the armed forces of the Philippines; that she did not at any time renounce her nationality (United States) before a diplomatic or consular officer of the United States; that she did not at any time become a citizen of any country through naturalization; that she did not at any time voluntarily acquire any nationality; that she applied for and was refused an American passport to come to Guam, but was issued a Philippine passport by the Department of Foreign Affairs of the Philippines, No. 3709, on August 8, 1959 at Manila, Philippines, and used it to come to Guam; that in connection with the Philippine passport she took an oath of allegiance to the Philippine Government; that she did not know what this oath was about; that she was denied an American passport by the American authorities in the Philippines because she "Stayed too long in the Philippines."

On April 19, 1956, petitioner testified under oath at the office of Immigration and Naturalization Service at Agana, Guam as follows: "That her parents are both dead; that her father, Sylvestre Cruz, was born in Guam and her mother, Maria Lizama Cristomo, was also born at Agana, Guam; that her father died in 1952 in Toto Village, Guam; that he was a Guamanian; that her mother died on Guam sometime after 1944; that her parents did not live at any place outside of Guam; that when she applied for an American passport at the American Embassy at Manila, Philippines, she was denied forms for a passport because 'A friend of mine who was a neighbor worked in the American Embassy. I asked him to get the forms for me. I did not get them because they told him I stayed in the Philippines too long'; that she did not at any time personally go to the American Embassy for the passport because this friend of hers was her neighbor and she depended upon him to get the forms for her; that her daughter, Maria Tolentino, was also denied an American passport by the American Embassy at Manila; that, however, her daughter, Isabel Betimana, applied for and received an American passport sometime in May of 1946, and that she was not a citizen of the Republic of the Philippines on July 4, 1946."

On April 27, 1956, the office of the U. S. Immigration and Naturalization Service in Agana, Guam wrote a letter to the office of the American Consul at Manila, Philippines inquiring into the circumstances leading to the issuance of a Philippine passport to the petitioner.

On June 26, 1956, the American Embassy at Manila, in response to the U. S. Immigration and Naturalization's letter of April 27, 1956, merely transmitted thermofax copies of a passport application executed at Imus, Cavite, Philippines on August 4, 1951 by the petitioner, which contained the oath of allegiance and a copy of the oath of allegiance which was subscribed and sworn to on July 26, 1951 at Manila, Philippines, and petitioner's certificate of renunciation of United States citizenship.

Under the provisions of the Immigration and Nationality Act, this petitioner is required to establish, among other matters, that she is an alien eligible for naturalization.

The term "naturalization" means the conferring of nationality of a state upon a person after birth by any means what-

soever, Section 101(a) (23) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101(a) (23).

The term "alien" means any person not a citizen or national of the United States, 8 U.S.C.A. § 1101(a) (3).

The term "national" means a person owing permanent allegiance to a state, 8 U.S.C.A. § 1101(a) (21).

The term "national of the United States" means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States, 8 U.S.C.A. § 1101(a) (22).

Section 206 of the Nationality Act of 1940, as amended by Section 4(a) of the Act of August 1, 1950 (64 Stat. 384) entitled "Persons living in and born in Guam", 8 U.S.C.A. § 1407(b):

> "All persons born in the island of Guam on or after April 11, 1899 (whether before or after August 1, 1950), subject to the jurisdiction of the United States, are declared to be citizens of the United States: Provided, That in the case of any person born after August 1, 1950, he has taken no affirmative steps to preserve or acquire foreign nationality."

Section 401, 8 U.S.C.1946 Ed. § 801, 54 Stat. 1137, 1168 (66 Stat. 267, 8 U.S.C.A. § 1481):

> "(a) A person who is a national of the United States whether by birth or naturalization, shall lose his nationality by—* * *
>
> "(a) (2) taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state or * * *
>
> "(a) (6) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State; or * *"

■ The petitioner did not lose her citizenship by marrying to her husband, a Filipino, in 1926 because in 1926 she was not a citizen of the United States. The expatriative provisions of the Act of September 22, 1922, 42 Stat. 1021, contemplated only loss of *citizenship* and *not non-citizen nationality.* (Emphasis supplied.)

The petitioner did not become a citizen of the United States until August 1, 1950, under the provisions of Section 206(b) of the Nationality Act of 1940, as amended by Section 4(a) of the Act of August 1, 1950 (64 Stat. 384) 8 U.S. C.A. § 1407(b).

■ The petitioner's certificate of renunciation of her United States citizenship, taken before a notary public in the Philippines, is not considered as a renunciation of her United States citizenship as not being taken before a diplomatic or consular officer of the United States in a foreign state, but merely before a notary public. Therefore, her renunciation was a nullity as it did not conform to Section 401(f) of the Nationality Act of 1940, as amended, 8 U.S.C.A. § 1481(a) (6).

■ The oath of allegiance to the Republic of the Philippines was taken by the petitioner on August 26, 1951 before a notary public. It was not done before an official of the Republic of the Philippines. Petitioner, however, on August 4, 1951, took an oath of allegiance to the Republic of the Philippines before an official of the Republic of the Philippines in connection with her application for a Philippine passport so that she may return to and reside on Guam because she was unable to obtain an American passport to return to Guam. Her only alternative was to return to Guam with a Philippine passport. This was the only purpose that the petitioner took the oath of allegiance to the Republic of the Philippines on August 4, 1951.

The United States Court of Appeals, Third Circuit, in the case of Jalbuena v. Dulles, 254 F.2d 379, decided on April 11, 1958, stated that where an individual, a natural born citizen of the United States, moves to the Philippine Islands and by operation of law became a citi-

zen thereof so that he then had a dual citizenship, action of the individual, who did not realize he retained United States citizenship, in applying for and receiving a Philippine passport after subscribing to an oath to support the Philippine Constitution, did not constitute a renunciation of the United States citizenship which would authorize a revocation thereof under statute. In the Jalbuena case, the Court cited in the footnotes, at page 381, note 2, the statement made by Secretary of State, later, Chief Justice Hughes:

"It is the spirit and meaning of the oath, and not merely the letter, which is to determine whether it results in expatriation. It is not a mere matter of words. The test seems to be the question whether the oath taken places the person taking it in complete subjection to the state to which it is taken, at least for the period of the contract, so that it is impossible for him to perform the obligations of citizenship to this country."

When making the passport application, the petitioner stated therein that she desired a passport for use to reside on the Island of Guam and further stated her intention to return to the Philippines within "indefinite years or months." Therefore, the oath taken in 1951 immediately prior to her return to Guam did not place the petitioner taking it in complete subjection to the Republic of the Philippines to which it was taken. Consequently, under the rule of the Jalbuena decision, the petitioner did not lose her American citizenship by taking this oath.

### Conclusions of law.

(a) That the petitioner became a citizen of the United States on August 1, 1950 under Section 206 of the Act of October 14, 1940, as amended by the Act of August 1, 1950 (Organic Act of Guam).

(b) That her renunciation of her American citizenship in 1951 was a nullity as it was not taken before an American official of the State Department abroad pursuant to Section 401 of the Nationality Act of 1940, as amended, 8 U.S.C.A. § 1481(a) (6).

(c) That the petitioner did not expatriate herself by taking the oath of allegiance to the Republic of the Philippines on August 4, 1951 as it was made in connection with, and the sole purpose for, obtaining an application of a Philippine passport to return to Guam to reside.

(d) That under 8 U.S.C.A. § 1427, petitioner may not be naturalized as she has been and still is a citizen of the United States.

It is the opinion of this Court that the petitioner became a citizen of the United States on August 1, 1950 and did not lose her American citizenship and therefore she still is an American citizen. Because she has been and still is a citizen of the United States, she is not entitled to be naturalized.

Her petition for naturalization is hereby denied.