T.C. Memo. 1997-557


UNITED STATES TAX COURT


JORDON JAY FINGAR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1507-95.                    Filed December 22, 1997.


Jordon Jay Fingar, pro se.

<u>John T. Lortie</u>, <u>Avarian R. McKendrick</u>, and Marjorie
Desporte-Bryan (specially recognized), for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:  Respondent determined deficiencies in, and

additions to, petitioner's Federal income taxes as follows:

|       |            | Additions to Tax |            |
|-------|------------|------------------|------------|
| Year  | Deficiency | Sec. 6651(a)(1)  | Sec. 6653  |
| 1979  | $25,292    | $3,823           | $1,745     |
| 1980  | 35,137     | 9,248            | [1]2,150   |

[1]On brief, respondent argues that pursuant to sec. 6653(a), petitioner is subject to a $1,150 addition to tax for 1980. However, in the notice of deficiency, respondent determined the sec. 6653(a) addition to tax for 1980 to be $2,150. We find the $1,150 amount to be a typographical error.

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. All dollar amounts are rounded to the nearest dollar, unless otherwise indicated.

For 1979 and 1980, petitioner made estimated tax payments of $10,000 and $6,000, respectively. Petitioner, however, did not file his 1979 and 1980 Federal income tax returns until January 10, 1992. Respondent issued the notice of deficiency for 1979 and 1980 on November 2, 1994. Accordingly, the notice of deficiency is valid since it was issued within 3 years of the date petitioner filed his returns for the taxable years in issue. Sec. 6501(a).[1]

---

[1]    It appears respondent improperly assessed petitioner for 1979 and 1980 on the basis of a substitute return filed under sec. 6020(b) without issuing a notice of deficiency, in violation of sec. 6213(a). As a result of a question from the Court, respondent released the lien for 1979 but did not release the lien for 1980, apparently because petitioner's 1980 purported liability, as determined by respondent, was not satisfied.

After concessions by the parties,[2] the issues for decision are: (1) Whether petitioner may claim Schedule A deductions for taxes and interest in excess of the amounts allowed by respondent for the taxable years in issue. We hold he may, to the extent set out below. (2) Whether pursuant to section 162, petitioner may claim unreimbursed business expense deductions in excess of the amounts allowed by respondent for the taxable years in issue. We hold he may, to the extent set out below. (3) Whether pursuant to section 280A, petitioner is entitled to deduct home office expenses for the taxable years in issue. We hold he is not. (4) Whether for 1980, petitioner had unreported interest income of $853. We hold he did not. (5) Whether for 1979, petitioner is entitled to a theft loss not previously claimed on his return. We hold he is not. (6) Whether pursuant to section 6651(a)(1) petitioner is liable for additions to tax for his failure to timely file Federal income tax returns for the taxable

---

[2]    At trial and on brief, respondent concedes that petitioner correctly reported his share of his then law firm's partnership income of $96,340 for 1979 and $88,428 for 1980.
   Respondent further concedes that petitioner correctly claimed Keogh plan deductions of $4,766 for 1979 and $4,150 for 1980.
   Respondent further concedes that petitioner provided receipts to verify the amounts set out below were spent by petitioner for 1979 and 1980.

| Item | 1979 Amount Verified | 1980 Amount Verified |
|------|---------------------|---------------------|
| Taxes | $4,188 | -0- |
| Interest | 1,010 | -0- |
| Auto | 3,162 | $1,739 |
| Sailboat | 13,572 | 17,270 |
| T&E | 3,109 | 1,950 |

years in issue. We hold he is. (7) Whether pursuant to section 6653(a) petitioner is liable for additions to tax for negligence or intentional disregard of rules and regulations for the taxable years in issue. We hold he is.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits[3] are incorporated into our findings by this reference. At the time the petition in this case was filed, petitioner resided in Surfside, Florida.

<u>Petitioner</u>

During 1979, petitioner was a real estate attorney and partner at the law firm of Robinson, Silverman, Pearce, Aronsohn, Sand & Berman (Robinson Silverman or the firm) in New York City. While at Robinson Silverman, petitioner began working on transactions of the Bank of New York (the bank), one of the firm's larger and more active clients. At that time, petitioner was representing the bank in negotiating and closing multi-million dollar construction loans for large hotels, condominiums, and office buildings all over the country.

Robinson Silverman was not the only firm representing the bank during 1979. Robert Greenbaum (Greenbaum), a partner at

---

[3] At trial, petitioner offered Exs. 11, 12, 13, 14, 86, 89, and 90 into evidence. Respondent objected on the grounds of relevancy. Upon consideration, we find that the exhibits fail to address the issues in the instant case. Accordingly, respondent's objections are sustained.

another New York law firm, also represented the bank on construction loan transactions. Petitioner and Greenbaum had been friends for some time. They had worked together at a firm in Brooklyn, New York, after graduating from law school, and petitioner was the best man at Greenbaum's wedding.

Sometime before 1979, Jimmy Hamilton (Hamilton), an officer at the bank, approached petitioner and Greenbaum with a proposition. The bank was dissatisfied with the way Robinson Silverman and Greenbaum's firm were handling the bank's business. Knowing that petitioner and Greenbaum were old friends, Hamilton suggested that they both leave their respective firms and form a boutique law firm which would represent the bank. The bank was starting a new project in Miami, Florida, known as the Turnberry Isle Yacht and Racquet Club (Turnberry Isle), a planned luxury condominium complex on the Intercoastal Waterway. The Turnberry Isle Project alone would entail construction loans in excess of $300 million, to be financed by the bank, with the legal representation of the bank to be exclusively by petitioner and his new law firm. The bank had other similar construction deals in Florida, which would be directed to their new firm. If petitioner and Greenbaum agreed, they would be permitted to represent other clients with the bank's approval. Petitioner and Greenbaum immediately accepted the bank's offer. Until petitioner and Greenbaum left their respective jobs the bank continued to give their firms business.

Sometime in 1980 petitioner, Greenbaum, and Dickey, another attorney, formed the new law firm known as Dickey, Greenbaum & Fingar (Dickey Greenbaum). Dickey Greenbaum was located in a downtown office space selected by the bank and close to it.

## The Blue Chip

In 1976, petitioner purchased the Blue Chip (Blue Chip or the boat), a year-old, 37-foot sailboat for $29,000. Petitioner paid $5,000 in cash and financed the rest at an interest rate of 9½ percent. During the taxable years in issue, petitioner used the boat to entertain clients.

OPINION

At the outset, we note that the recordkeeping by petitioner for the years in issue was inconsistent and disorganized. While we found petitioner generally to be a credible witness, his lack of consistent recordkeeping and his disorganized presentation at trial caused the Court much additional effort in reviewing the record and sorting out the issues. Thus, the responsibility for any omissions in the record lies with petitioner. Given that petitioner has the burden of proof, such omissions weigh against him.

## Issue 1. Schedule A Deductions

Respondent determined that for 1979 and 1980, petitioner is not entitled to deduct taxes and interest in excess of the

amounts allowed in the notice of deficiency.[4] Petitioner asserts that the amounts claimed for taxes and interest have been sufficiently substantiated, both through his oral testimony and the documentary evidence presented at trial.

As a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Nickeson v. Commissioner, 962 F.2d 973, 976 (10th Cir. 1992), affg. Brock v. Commissioner, T.C. Memo. 1989-641. Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Failure to prove the exact amount of an otherwise deductible item is not fatal, because generally, unless precluded by section 274, we may estimate the amount of such an expense and allow the deduction to that extent. Finley v. Commissioner, 255 F.2d 128,

---

[4]    In the notice of deficiency, respondent allowed petitioner to deduct the following amounts:

| Item | 1979 Amount Allowed | 1980 Amount Allowed |
|---|---|---|
| Taxes | $5,091 | $422 |
| Interest | 1,010 | -0- |

133 (10th Cir. 1958), affg. 27 T.C. 413 (1956); Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). The estimate, however, must have some reasonable evidentiary basis. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

A. Taxes

Respondent determined that petitioner is entitled to deduct taxes of $5,091 and $422 for 1979 and 1980, respectively. Petitioner deducted taxes of $17,000 for 1979 and $17,300 for 1980.[5]

Section 164(a) generally permits taxpayers to deduct State and local income taxes, general sales taxes, and taxes on the sale of gasoline paid or accrued within the taxable year. Sec. 1.164-1(a), Income Tax Regs.

Petitioner estimated his deduction for general sales tax, on the basis of a sales tax of 6 percent multiplied by the various purchases he made for the boat, the car, and other miscellaneous expenditures he incurred during the taxable years in issue. Petitioner's explanation, although logical, is implausible. He deducted $10,000 in general sales tax for each year. Assuming a sales tax of 6 percent, petitioner would have had to purchase $166,666 worth of items subject to sales tax in 1979 and 1980 to have incurred $10,000 in general sales tax for each of those

---

[5] The $17,000 in taxes that petitioner deducted in 1979 includes $6,000 for State and local income taxes, $1,000 for State and local gasoline tax, and $10,000 for general sales tax.
The $17,300 in taxes that petitioner deducted in 1980 includes $6,000 for State and local income taxes, $1,300 for personal property tax, and $10,000 for general sales tax.

years.  This is unlikely, given that petitioner reported income for 1979 and 1980 of $99,558 and $89,779, respectively.  It is reasonable to infer, however, that petitioner made purchases in connection with his boat and car, and for other miscellaneous items.  Accordingly, we hold that petitioner may deduct general sales tax of $1,000 for 1979 and $1,000 for 1980.  Cohan v. Commissioner, supra.

For 1979, respondent concedes that petitioner paid New York State income taxes of $4,188.  For 1980, respondent did not allow petitioner to deduct any State income taxes, because he failed to substantiate that he incurred such expenditures.  Petitioner testified, however, that he paid State and local income taxes for 1980 but was unable to get a copy of his cashed checks because the bank he had used went out of business.  Given that petitioner's income did not substantially fluctuate from 1979 to 1980, it is reasonable to infer that petitioner paid approximately the same amount of State income taxes in 1980 as he did in 1979.  Accordingly, we allow petitioner to deduct $4,000 in State income taxes for 1980.

B.  Interest

Respondent determined that petitioner is entitled to deduct interest of $1,010 and zero for 1979 and 1980, respectively. Petitioner deducted interest of $7,200 for 1979 and $10,000 for 1980.

Section 163(a) generally permits taxpayers to deduct interest paid or accrued within the taxable year on indebtedness. Sec. 1.163-1(a), Income Tax Regs.; see also Eboli v. Commissioner, 93 T.C. 123, 129 (1989).

Petitioner presented no documentation to substantiate the interest deductions claimed, except for $1,010 which respondent conceded for 1979. Petitioner testified that he tried to obtain a copy of his cashed checks for 1979 and 1980 from his bank, but the bank was no longer in existence. During these years petitioner had outstanding a $25,000 loan on his sailboat and a $7,000 loan on his car. It is thus reasonable to infer that petitioner incurred interest expenses in excess of the amounts allowed by respondent in the notice of deficiency. Using our best estimate, we hold that petitioner may deduct interest of $3,200 in 1979 and $3,200 in 1980. Cohan v. Commissioner, supra.

Issue 2. Unreimbursed Business Expenses

Respondent determined that for 1979 and 1980, petitioner is not entitled to deduct automobile expenses, travel and entertainment expenses, and expenses incurred in connection with his boat in excess of the amounts allowed in the notice of deficiency.[6]

---

[6]    In the notice of deficiency, respondent allowed petitioner to deduct the following amounts:

| Item | 1979 Amount Allowed | 1980 Amount Allowed |
| --- | --- | --- |

(continued...)

A.  Automobile Expenses

Respondent determined that petitioner may deduct $530 in automobile expenses for 1979 and $0 for 1980.  Petitioner asserts that he used his Jaguar XJ-12-L (the car) solely for business purposes; therefore his deductions for the taxable years in issue are fully allowable.

Section 162 generally allows a taxpayer to deduct all ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business.  Sec. 162(a).  An expense is ordinary if it is considered to be "normal, usual, or customary" in the context of the particular business out of which it arose. Deputy v. Du Pont, 308 U.S. 488, 495-496 (1940).  An expense is necessary if it is appropriate and helpful to the operation of the taxpayer's trade or business.  Commissioner v. Tellier, 383 U.S. 687, 689 (1966).  A taxpayer's general statement that his expenses were incurred in pursuit of a trade or business normally is not sufficient to establish that the expenses had a reasonably direct relationship to that trade or business.  Ferrer v. Commissioner, 50 T.C. 177, 185 (1968), affd. per curiam 409 F.2d 1359 (2d Cir. 1969).  Rather, a taxpayer ordinarily must maintain records sufficient to permit verification of income and expenses.

---

[6](...continued)

| | | |
|---|---|---|
| Auto | $530 | -0- |
| T&E | 1,136 | $1,950 |
| Sailboat | -0- | -0- |

Sec. 6001; sec. 1.6001-1, Income Tax Regs.[7]   Accordingly, we must determine whether petitioner has met his burden of proving that such expenses satisfy the requirements of section 162(a).

For 1979 and 1980, petitioner deducted $23,000 and $30,000, respectively, for business travel and entertainment expenses. Petitioner's automobile expenses are included in these amounts. The record, however, is unclear as to the specific amount that petitioner claimed for automobile expenses.  In the notice of deficiency for 1979, respondent allowed petitioner as a reasonable deduction 55 miles per week at 18.5 cents per mile or $530.  For 1980, respondent did not allow petitioner a deduction for any expenses he incurred in connection with the car.

Respondent argues that petitioner did not maintain a mileage log nor did he record the business purpose of his auto expenses. Accordingly, respondent contends that petitioner failed to establish the total business miles driven during the taxable years in issue.

At trial, petitioner testified that he used his car to transport clients to and from closings.  He further testified that he did not drive to work but used the subway to commute. Furthermore, petitioner stressed that because he lived in Manhattan, he did not need a car; that maintaining a car in New

_____

[7]   Sec. 274(d)(4) was added to apply to years beginning after 1985.  Sec. 274(d)(4) requires specific substantiation for expenses "with respect to any listed property (as defined in section 280F(d)(4))".  Sec. 280F(d)(4) includes any passenger automobile as listed property.

York City was extremely expensive; and that he used the car solely for business to transport clients. Given the availability of mass transportation in New York City, the constant traffic congestion, and the high cost of, as well as the restrictions on, parking, we find highly persuasive petitioner's testimony that he did not use his car for commuting.

At trial, respondent conceded that for 1979 and 1980, petitioner substantiated automobile expenses of at least $3,162 and $1,739 respectively. Thus, on the basis of the entire record, we hold that petitioner may deduct $3,162 in 1979 and $1,739 in 1980.

### B. Sailboat

Respondent determined that for 1979 and 1980 petitioner is not entitled to deduct any expenses incurred in connection with the ownership and operation of the Blue Chip, because he failed to establish that the expenses he incurred in connection with the boat were ordinary and necessary under section 162. Petitioner asserts that he used the boat solely for business purposes; therefore, he contends that his deductions for the taxable years in issue are fully allowable. However, section 162 does not control this issue.

For tax years beginning in 1979, section 274(a)(1)(B) strictly disallows the deduction, otherwise allowable, of an item with respect to a facility used for, or in connection with, entertainment as defined in section 274(a)(1)(A), such as a boat.

Harrigan Lumber Co. v. Commissioner, 88 T.C. 1562, 1565 (1987),
affd. without published opinion 851 F.2d 362 (11th Cir. 1988);
see also sec. 1.274-2(e)(2), Income Tax Regs.

Accordingly, we hold that petitioner cannot deduct any
expenses incurred in connection with the Blue Chip.[8]

C.  Travel and Entertainment

Respondent determined that petitioner is entitled to deduct
$1,136 in travel and entertainment (T&E) expenses for 1979 and
$1,950 for 1980.  Petitioner deducted T&E expenses of $23,000 for
1979 and $30,000 for 1980.  Petitioner asserts that he provided
respondent with receipts to verify that he incurred such
expenses; therefore, he argues that his T&E deductions for the
taxable years in issue are fully allowable.

A taxpayer is required under section 274(d) to substantiate
entertainment expenses by adequate records to corroborate his or
her own testimony as to:  (1) The amount of the expense, (2) the
time and place the expense was incurred, (3) the business purpose
of the expense, and (4) the business relationship to the taxpayer
of each expense incurred.  Sec. 1.274-5(b)(1), Income Tax Regs.
For travel expenses incurred while away from home, a taxpayer
must maintain adequate records reflecting:  (1) The amount of
each separate expenditure of transportation and lodging, (2) the

---

[8]     At trial and on brief, petitioner asserts that he is
entitled to a depreciation deduction for the Blue Chip not
previously claimed on his 1979 and 1980 returns.  Given our
holding, however, that petitioner's boat is an entertainment
facility within the meaning of sec. 274(a)(1)(B), a depreciation
deduction with respect to the boat is disallowed.

dates of departure and return for each trip, and the number of days spent on business, (3) the place of travel, and (4) the business benefit derived by the taxpayer for each trip. Sec. 1.274-5(b)(2), Income Tax Regs.

At trial, petitioner's testimony regarding his travel, meal, and entertainment expenses was vague and in many instances incoherent. Although petitioner submitted various receipts and a personal diary for each tax year establishing that he incurred expenses, these documents fail to establish the business purpose and business relationship of these expenses. Accordingly, petitioner has failed to meet the strict substantiation requirements of section 274(d), and we, therefore, sustain respondent's determination for the taxable years in issue.

Issue 3. Home Office Deductions

Respondent determined that petitioner is not entitled to a home office deduction for the taxable years in issue. Petitioner asserts that during 1979 his home office was used for many meetings "with the bank people, and with Greenbaum and Dickey, plotting our escape from our respective firms." Similarly, in 1980, petitioner asserts that he used his home office to meet with clients from Robinson and Silverman and to wind down his old business.

Section 280A generally prohibits the deduction of otherwise allowable expenses with respect to the use of an individual taxpayer's home. Section 280A(c)(1) provides a narrow exception

to the disallowance of home office deductions where a taxpayer can establish that a portion of the home is used exclusively on a regular basis as: (1) The taxpayer's principal place of business, or (2) as a place of business which is used by clients or customers in meeting or dealing with the taxpayer in the normal course of business. While determination of a taxpayer's principal place of business for purposes of section 280A depends upon the particular facts of the case, the two primary factors applied in determining whether a home office qualifies as a taxpayer's principal place of business are: (1) The relative importance of the activities performed at each business location, and (2) the time spent at each location. Commissioner v. Soliman, 506 U.S. 168, 175 (1993).

Petitioner has failed to establish that he used a portion of his apartment exclusively on a regular basis for business. Petitioner testified that the alleged home office was located in a dining area between the living room and the kitchen. There is no indication that the room was partitioned off from the rest of the apartment. Furthermore, the evidence does not enable us to find that petitioner used his home office to regularly meet with clients. Finally, petitioner has failed to establish that his home office was his principal place of business. The evidence is clear that during the taxable years in issue, the principal places of petitioner's law practice were at Robinson Silverman and Dickey Greenbaum, where petitioner had an office and a

secretary, spent most of his time, and earned his livelihood. For the reasons discussed herein, we sustain respondent's determination on this issue.

## Issue 4.  Unreported Interest Income

For 1980, respondent determined that petitioner failed to report interest income of $853 from the Irving Trust Co. Petitioner asserts that he received $2,291 of interest income in 1980 and that he correctly reported that amount on his 1980 Federal income tax return.

As a general rule, interest received by or credited to a taxpayer within the taxable year, including interest on savings or other bank deposits constitutes gross income and is fully taxable.  Sec. 1.61-7, Income Tax Regs.

At trial, respondent submitted five Forms 1099 totaling $1,429 (the Forms 1099) to establish that petitioner has unreported income of $853 for 1980.  However, the Forms 1099 on which respondent relies refer to 1979, not to 1980.  Moreover, none of the Forms 1099 are from the Irving Trust Co. Accordingly, we hold that petitioner correctly reported his interest income for 1980.

## Issue 5.  Theft Loss

As a general rule, in computing taxable income, a taxpayer may deduct, pursuant to section 165(a), any loss sustained during the taxable year, including a loss arising from theft which is not compensated by insurance or otherwise, if the taxpayer meets

the requirements of section 165 and the regulations thereunder. If the theft loss is not connected with a taxpayer's trade or business, a deduction shall be allowed only to the extent that the amount of loss to the taxpayer arising from each casualty exceeds $100. Sec. 165(c)(3).

At trial and on brief, petitioner asserts that he is entitled to a $1,739 theft loss deduction not previously claimed on his 1979 return for camera equipment allegedly stolen from his car in March of 1979. Petitioner, however, has not established that he has met the requirements of section 165 entitling him to such a deduction. Petitioner did not submit a police report as evidence that the theft actually occurred, nor did he submit receipts to establish the amount spent for each item. Accordingly, petitioner has failed to carry the burden of proof on this issue.

Issue 6.  Section 6651 (a)(1) Addition to Tax

For 1979 and 1980, respondent determined that petitioner, pursuant to section 6651(a)(1), is liable for additions to tax of $3,823 and $9,248, respectively.

Section 6651 imposes an addition to tax for failure to timely file a Federal income tax return unless it is shown that the failure is due to reasonable cause and not due to willful neglect. Petitioner has the burden of proving that respondent's determination of the addition to tax is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

Petitioner did not file his income tax returns for 1979 and 1980 until January 10, 1992. He failed to present any evidence that his failure to timely file was due to anything other than willful neglect. Accordingly, we sustain respondent's determination on this issue.

Issue 7. Section 6653(a) Addition to Tax

For 1979 and 1980, respondent determined that petitioner, pursuant to section 6653(a), is liable for additions to tax of $1,745 and $2,150, respectively.

Section 6653(a) imposes an addition to tax of 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Negligence is defined as lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The burden is on petitioner to show that he acted reasonably and exercised due care. Id.

Petitioner did not address the section 6653 issue at trial or on brief. Therefore, he failed to carry his burden of proof, and we sustain respondent's determination on this issue.

To reflect the foregoing,

Decision will be entered

under Rule 155.