T.C. Memo. 1998-447


UNITED STATES TAX COURT


PATRICK E. CATALANO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10069-96.                    Filed December 23, 1998.


Patrick E. Catalano, pro se.

<u>Margaret Rigg</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined deficiencies and accuracy-related penalties in petitioner's Federal income taxes as follows:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a)[1] |
|------|------------|------------------------------------------|
| 1990 | $9,743 | $1,949 |
| 1991 | 7,289 | 808 |
| 1992 | 26,951 | 5,390 |

The issues for decision are: (1) Whether petitioner's S corporation is entitled to deduct lease payments for the use of petitioner's boats; (2) if the answer to the foregoing is in the negative, whether the petitioner may exclude a portion of those lease payments from income; and (3) whether petitioner is subject to the accuracy-related penalties for negligence.

                    FINDINGS OF FACT[2]

Petitioner resided in San Francisco, California, at the time the petition herein was filed.  For the years in issue, petitioner was the sole shareholder of an S corporation named Patrick E. Catalano, a Professional Law Corporation.

Petitioner's corporation maintained law offices both in San Francisco and in San Diego, California.  Petitioner's clients were primarily from San Francisco, the adjacent Marin County area, or the San Diego area.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioner, as an individual, owned three motorboats which he leased to his corporation for various periods during the years at issue pursuant to written lease agreements executed by petitioner in his individual capacity as lessor and on behalf of his corporation as lessee. From February 25, 1985, through June 30, 1991, petitioner leased a 40-foot Mainship cabin cruiser to the corporation. The Mainship had a galley and bedroom and was equipped with a large television, a stereo, and a radio. Petitioner berthed the Mainship in Sausalito, California (located north of San Francisco in Marin County). From June 25, 1991 through 1992 petitioner leased to his corporation two Donzi powerboats, which petitioner described as "pleasure boats". Petitioner berthed one of the Donzi powerboats in Sausalito and the other in San Diego.

The boats were used mostly on weekends. Petitioner invited clients of his legal practice and potential clients aboard his boats. Business discussions took place on board. Occasionally, the clients were accompanied by their spouses. Petitioner watched television on the Mainship with his guests, and he used the stereo whenever he was on board. He kept three sets of binoculars on board which his guests could use. Occasionally, he served food and beverages to his guests while they were on board. After meeting on the boat, petitioner would take his clients or other business contacts for a ride out on San Francisco Bay. He

taught one client, a Mr. Labruzzo, how to operate one of the boats.

Petitioner reported his corporation's lease payments for the boats as rental income on Schedule E of his individual Federal income tax returns, against which he deducted expenses relating to the boats, including repairs, maintenance, insurance, interest, taxes, docking fees, and depreciation.  Petitioner's corporation deducted the boat lease payments on its Federal corporate income tax returns.  For its fiscal years, which ended May 31, the corporation reported boat lease expenses in 1990 of $57,995, in 1991 of $15,816, and in 1992 of $110,714 and deducted 80 percent of these amounts, pursuant to section 274(n).  For the same years it reported 1990 income of $40,346, a 1991 loss of $218,390, and income in 1992 of $136,162.

Respondent accepted petitioner's treatment of the boat lease payments and related expenses on Schedule E of his individual returns, but disallowed the corporation's deductions of the lease payments for the years in issue.  The disallowances increased the corporation's income, or decreased its losses, by the amounts disallowed.  Because an S corporation's income and losses are passed through to its shareholders, the effect of the disallowances was to increase the income, or decrease the loss,

that petitioner was required to report on his individual Federal income tax returns for the years in issue.[3]

OPINION

In general, section 162 provides for the deductibility of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. However, section 274 prohibits deductions otherwise allowable for expenses paid with respect to a facility used in connection with an activity generally considered to constitute entertainment, amusement, or recreation. Sec. 274(a)(1)(B); sec. 1.274-2(a)(2)(i), Income Tax Regs. The provision of section 274 applicable to entertainment facilities (section 274(a)(1)(B)) was specifically amended by section 361(a) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat 2847, to provide a flat prohibition on deductions for such facilities--that is, deductions for entertainment facilities are prohibited without regard to whether the taxpayer can establish that the expenditure was directly related to or associated with the active conduct of his trade or business.

The test of whether an activity is an activity which "is of a type generally considered to constitute entertainment, amusement, or recreation" for purposes of the statute is an

---

[3] By operation of a statutory formula, the increase in the amount of petitioner's income also caused a decrease in the amount of allowable itemized deductions for 1991 and 1992.

objective one.  Sec. 1.274-2(b)(1)(ii), Income Tax Regs.  That
regulation provides:

> An objective test shall be used to determine whether an
> activity is of a type generally considered to
> constitute entertainment.  Thus, if an activity is
> generally considered to be entertainment, it will
> constitute entertainment for purposes of * * * section
> 274(a) regardless of whether the expenditure can also
> be described otherwise * * *.  This objective test
> precludes arguments such as * * * that an expenditure
> for entertainment should be characterized as an
> expenditure for advertising or public relations. * * *

There can be no dispute that, objectively, petitioner's
boats, a cabin cruiser and two other "pleasure boats", as he
termed them, constitute entertainment facilities.  See Rutz v.
Commissioner, 66 T.C. 879 (1976); Nicholls, North, Buse Co. v.
Commissioner, 56 T.C. 1225 (1971); see also Gordon v.
Commissioner, T.C. Memo. 1992-449; Nguyen v. Commissioner, T.C.
Memo. 1989-101.  Under an objective test, boats such as
petitioner's are generally considered to be associated with
recreation.  Petitioner's own testimony establishes that he used
the boats at least in some part for providing entertainment to
clients and potential clients.  Petitioner has conceded that he
invited clients and potential clients aboard his boats, sometimes
accompanied by their spouses.  On board, although some business
discussions may have taken place, petitioner also watched
television with his guests and used the stereo.  There were three
sets of binoculars for his guests' use, and occasionally
petitioner served them food and beverages.  Petitioner took his

clients or other business contacts for rides on San Francisco Bay. He taught one client, a Mr. Labruzzo, how to operate one of the boats.

We conclude that, because the boats meet the objective criteria for entertainment facilities under section 274(a), amounts expended to lease the boats do not qualify as business expense deductions.

Petitioner has testified that the boats were used for substantial business purposes in that he conducted meetings with clients or potential clients. He maintains that the boats were, in effect, second offices, the location of which was more convenient for some clients. Such testimony is unavailing. The 1978 amendment of section 274(a)(1)(B), which is applicable here, "indicates that any use of the facility, no matter how small, in connection with entertainment is fatal to the claimed deduction." Ireland v. Commissioner, 89 T.C. 978, 983 (1987); see Gordon v. Commissioner, supra. The legislative history accompanying the 1978 amendment to section 274 recognized "that some legitimate business expenses may be incurred with respect to entertainment facilities". S. Rept. 95-1263 (1978), 1978-3 C.B. (Vol. 1) 321, 472. Congress nevertheless disallowed the deduction of such expenses in view of the significant opportunities for abuse that had existed when such deductions were permitted for entertainment facilities. Id. Moreover, although there are some exceptions to

the disallowance provisions of section 274(a)(1)(B), see, e.g., section 274(e), none applies here. The expenses of leasing the boats are not deductible.[4]

Petitioner alternatively contends that, if the corporation is not allowed to deduct the boat lease payments, we should accord him some relief because, as a result of the disallowance, he is being taxed twice on the same income. He points out that the disallowance of his corporation's boat lease deductions increases the passthrough income he is required to report on his individual returns by the amount of the deductions. Because the

---

[4] Petitioner argued at trial and on brief that his substantiation of the business use of the boats met the requirements of sec. 274(d). We disagree. Sec. 274(d) requires a taxpayer to demonstrate the amount, the time and place, and the business purposes which give rise to his claimed business entertainment expenses "by adequate records or by sufficient evidence corroborating * * * [his] own statement". At trial petitioner attempted to present summaries gleaned from office records and prepared by someone on his staff. These summaries failed to meet the requirements for admissibility under Fed. R. Evid. 1006. Moreover, they failed to include information with respect to the business purpose of the boat utilizations. See S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 741:

> The requirement that the taxpayer's statements be corroborated will insure that no deduction is allowed solely on the basis of his own unsupported, self-serving testimony. * * *

> Generally, the substantiation requirements of the bill contemplate more detailed recordkeeping than is common today in business expense diaries. * * *

Thus, the boat lease deductions run afoul of both the substantiation requirements of sec. 274(d) and the prohibition of sec. 274(a)(1)(B).

corporation is an S corporation, he, and not the corporation, is liable for payment of income taxes on the resulting additional income. See secs. 1363(a), 1366. Petitioner further points out that, as the lessor of the boats to the corporation, he has previously reported the amount of the boat lease payments as income on his individual returns. Thus, he concludes, disallowance of the deductions at issue results in his being taxed twice on the same income.[5] To prevent this result, he argues that his individual income for the years at issue should be reduced by the amount that he reported as boat lease income (that is, net of deductions previously claimed by him against that income).[6]

We note at the outset that petitioner is selective in his objection to double taxation. On the returns as filed for the years at issue, petitioner took positions with respect to the

---

[5] We note that the additional income of petitioner's S corporation resulting from the disallowance of the boat lease deductions does not equal the boat lease net income reported by petitioner in his individual capacity, because petitioner took deductions for repairs, maintenance, insurance, interest, taxes, docking fees, and depreciation against the boat lease income reported on his individual returns.

[6] At trial petitioner submitted amended returns for the years at issue, apparently reflecting the removal of net boat lease income (after deductions previously taken for interest, maintenance, depreciation, etc.) from his individual returns. We treated these submissions as petitioner's motion for leave to amend petition, which we granted to permit consideration of petitioner's claim that his income should be reduced by the amount reported as net boat lease income.

boat lease transactions that subjected him to the same kind of double taxation that is the basis for his complaint herein.  On such returns, petitioner's corporation deducted only 80 percent of the lease payments it made to him (as required by section 274(n)), whereas petitioner reported as income on his individual return 100 percent of the lease payments, albeit reduced by the expense deductions associated with providing the boats.  Thus, to the extent of 20 percent of the lease payments, there was no reduction in the passthrough income from his corporation to offset the lease income he reported in his individual capacity as a lessor.  Apparently petitioner structured the transaction to produce, and was willing to accept, such double inclusion of income so long as its magnitude was exceeded by the otherwise unallowable deductions for the costs associated with the boats that he was able to deduct as a lessor.

We believe petitioner's argument fails to take into account two basic principles.  First, the separate existence of corporations is firmly established under the tax law.  Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943).  Second, the business of a corporation--including that of an S corporation--is separate and distinct from that of its shareholders.  Deputy v. duPont, 308 U.S. 488, 494 (1940); Durando v. United States, 70 F.3d 548, 551-552 n.9 (9th Cir. 1995); see Crook v. Commissioner, 80 T.C. 27, 32 (1983), affd.

without published opinion 747 F.2d 1463 (5th Cir. 1984).
Accordingly, "Apart from certain situations permitting the
lifting of the corporate veil, the corporate entity and the legal
consequences flowing therefrom are controlling."  Amorient, Inc.
v. Commissioner, 103 T.C. 161, 169 (1994).  In view of these
fundamental principles, courts have consistently required
shareholders to treat income received as passthroughs from their
S corporations as distinct from income the same shareholders
received for providing personal services to their corporations.
This requirement applies even though the shareholders, and not
their corporations, are liable for their pro rata shares of
corporate income on their individual income tax returns.  See,
e.g., Durando v. United States, supra (passthrough income from an
S corporation is not net earnings from self-employment for
purpose of computing Keogh plan deductions); Crook v.
Commissioner, supra (passthrough income of S corporation is
dividend income, not wages or salary, to its shareholders for
purposes of investment interest deductions); Ding v.
Commissioner, T.C. Memo. 1997-435 (for purposes of self-
employment tax, passthrough losses from an S corporation cannot
be used to reduce shareholder's self-employment income paid by
the corporation).  As the Court of Appeals for the Ninth Circuit
has explained, it is improper

>     to treat income earned by a corporation through its
>     trade or business as though it were earned directly by

its shareholders, even when, as here, the shareholders' services helped to produce that income. An S corporation's income passes through to its shareholders not because they helped to create that income, but because they are shareholders. [Durando v. United States, supra at 552.]

Here petitioner had accession to taxable income from two separate sources--one, as passthrough income from his S corporation, and the other as rental income from his individual activity of leasing boats to his corporation. The impact on petitioner, as a shareholder, of the disallowance of his S corporation's deductions for the boat lease payments under section 274 is unrelated to his recognition of income as a lessor with respect to those same payments. "[S]ection 274 does not affect the includability of an item in, or the excludability of an item from, the gross income of any taxpayer." Sec. 1.274-1, Income Tax Regs. The separate existence of petitioner's S corporation means that petitioner as an individual generally can enter a transaction with the corporation as if he were unrelated to it, which petitioner has chosen to do in the case of the boat leasing transactions, but as a consequence petitioner's distinct positions as shareholder and as unrelated lessor with respect to the corporation must be kept separate for tax purposes.

The taxable incomes of a shareholder and his S corporation are computed separately, even though the corporation's taxable income is passed through to, and the tax thereon imposed upon, the shareholder. See sec. 1363(a) and (b). This separate

computation of taxable income means that the disallowance of a deduction for a lease payment by the lessee-corporation has no impact on the lessor-shareholder's recognition of the lease payment as income. "There is no necessary correlation between the payor's right to a deduction for a payment and the taxability of the payment to the recipient." 1 Mertens, Law of Federal Taxation, sec. 5A.11, at 22 (1998 rev.); see also Smith v. Manning, 189 F.2d 345 (3d Cir. 1951); Sterno Sales Corp. v. United States, 170 Ct. Cl. 506, 345 F.2d 552 (1965); Reynard Corp. v. Commissioner, 30 B.T.A. 451 (1934); Mosby v. Commissioner, T.C. Memo. 1984-90; Zeunen Corp. v. United States, 227 F. Supp. 952 (E.D. Mich. 1964). This separate treatment of a payment's deductibility and recognition as income obtains even where the payor and payee are a corporation and its sole shareholder, Reynard Corp. v. Commissioner, supra; Mosby v. Commissioner, supra; a parent corporation and its wholly owned subsidiary, Zeunen Corp. v. United States, supra; or two wholly owned subsidiaries of a common parent. Sterno Sales Corp. v. United States, supra. Petitioner has taxable income arising from two capacities, as leasing income from his individual activity of leasing boats and as a shareholder receiving the passthrough income of his S corporation conducting a law practice.

Petitioner contends that the "tax benefit rule" provides the relief he seeks--that is, the exclusion of the boat lease income

from his individual income.  He claims that the disallowance of the corporation's boat lease deductions entitles him to exclude the boat lease income from the income reported on his individual return.

Petitioner misreads the scope of the tax benefit rule.  The tax benefit rule permits a taxpayer to exclude from taxable income the amount received as a recovery of an amount deducted in an earlier year, but only to the extent that the deducted amount did not give rise to a tax benefit in that earlier year.  Dobson v. Commissioner, 320 U.S. 489, 505-506 (1943); see Hudspeth v. Commissioner, 914 F.2d 1207 (9th Cir. 1990), revg. and remanding on other ground T.C. Memo. 1985-628.  Petitioner's receipt of the income he received as lessor is not a "recovery" within the meaning of the tax benefit rule; it was not "fundamentally inconsistent" with the corporation's taking a deduction.  See Hillsboro Natl. Bank v. Commissioner, 460 U.S. 370, 383 (1983).  Nor does the tax benefit rule permit a taxpayer to offset the impact of one adjustment against another where both pertain to the same taxable year.  As the Supreme Court explained in Hillsboro Natl. Bank v. Commissioner, supra at 378 n.10:

> Changes on audit reflect the proper tax treatment of items under the facts as they were known at the end of the taxable year.  The tax benefit rule is addressed to a different problem--that of events that occur after the close of the taxable year.

In his reply brief, petitioner further invokes the doctrine of equitable recoupment as a basis for the relief he seeks. The doctrine of equitable recoupment applies if "'a single transaction constitutes the taxable event claimed upon and the one considered in recoupment.' The single transaction must also be subject to two taxes based on inconsistent legal theories." Parker v. United States, 110 F.3d 678, 683 (9th Cir. 1997); Kolom v. United States, 791 F.2d 762, 767 (9th Cir. 1986).

Assuming, without deciding, that we have jurisdiction to apply the doctrine and that it was properly raised by petitioner, petitioner's situation fails to qualify for equitable recoupment. Although a "single transaction"--the lease of boats--is involved, petitioner participates in that transaction in two capacities: as lessor/payee and as sole shareholder of the lessee/payor, due to the separate recognition of the corporate entity. The taxes he pays in each capacity are not based on "inconsistent theories". The disallowance to the payor of a deduction is not inconsistent with the payee's receipt of income in respect of the same payment.

In the final analysis, there is no reason to reduce petitioner's income by the amount he reported from leasing his boats to his corporation. The fact that petitioner misconstrued the tax effects of doing business both individually and through a corporation does not provide a basis to ignore the tax

consequences of doing so. Petitioner chose to employ the corporate form, and "having elected to do some business as a corporation, he must accept the tax disadvantages." Higgins v. Smith, 308 U.S. 473, 477-478 (1940). He also chose to obtain the use of boats for his business through a leasing transaction, and

> while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not and may not enjoy the benefit of some other route he might have chosen to follow but did not. * * * [Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974); citations omitted.]

We hold that petitioner is liable for the deficiencies determined by respondent[7] and cannot exclude the boat lease income from his individual returns.

We must additionally decide whether petitioner is liable for accuracy-related penalties under section 6662(a) and (b)(1) for each of the years at issue. These sections provide that if any portion of an underpayment of tax is attributable to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to 20 percent of the underpayment which is so attributable. The term "negligence" includes any failure to make a reasonable attempt to comply with the statute, and the term

---

[7] It appears, however, that respondent may have disallowed a greater amount than was actually deducted as boat rental expense on the corporation's return for its taxable year ended May 31, 1992. We expect the parties to address this matter in their Rule 155 computations.

"disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

Petitioner bears the burden of proving that respondent's determination as to the accuracy-related penalties is in error. Rule 142(a). Petitioner argues that respondent has waived the penalties by not addressing them at trial. Petitioner is mistaken. The issue of the penalties arose in the pleadings, and petitioner retained the burden of proving the penalties inapplicable, regardless of whether the issue was addressed at trial. See Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

In this case, petitioner, an attorney, repeatedly caused his wholly owned S corporation to deduct expenses relating to entertainment facilities without regard to the explicit prohibition of such deductions in the Internal Revenue Code. Petitioner's attempt to treat the rent for two Donzi powerboats and a cabin cruiser as business expenses of his law practice strikes us as the kind of abuse that Congress sought to curb in enacting the absolute prohibition on entertainment facilities deductions contained in section 274(a)(1)(B).

Petitioner urges that he conferred with his accountant concerning the boat leasing activities. We are not persuaded that this action suffices to avoid the negligence penalties. Reliance upon disinterested expert advice may satisfy the prudent person standard, but only when the taxpayer has shown that he

provided correct and complete information to an adviser who has expertise regarding the tax ramifications of the transactions involved. See <u>Collins v. Commissioner</u>, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. <u>Dister v. Commissioner</u>, T.C. Memo. 1987-217. Here petitioner has failed to make that showing. We conclude that petitioner is liable for the accuracy-related penalties for the years in issue.

In view of the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.