Patrick E. CATALANO, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 99–70909.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 2000.

Filed Feb. 15, 2001.

Patrick E. Catalano, Pro Se, San Francisco, California, for the petitioner-appellant.

Patricia Bowman, Department of Justice, Washington, D.C., for the respondent-appellee.

Before: SCHROEDER, Chief Judge, HALL and W. FLETCHER, Circuit Judges.

PER CURIAM:

Patrick Catalano, an attorney, leased three boats to a corporation organized under subchapter S of the Internal Revenue Code. *See* 26 U.S.C. §§ 1361–79. He was the sole shareholder and used the boats to entertain clients. The corporation deducted the lease payments on its federal corporate income tax returns, so that the deductions reduced the corporate income that was passed through to Catalano. As the recipient of the lease payments, Catalano included the lease payments on his federal individual income tax returns.

The Tax Court found that Catalano's boats constituted entertainment facilities and that the deductions were therefore prohibited by 26 U.S.C. § 274(a)(1)(B). The Tax Court then rejected Catalano's argument that because the corporate-level deduction was denied, his individual income for the years at issue should be reduced by the amount he had previously reported as boat lease income, excluding the amount of deductions he had previously claimed against that income. Catalano appeals from the Tax Court's refusal to reduce his individual income to eliminate the lease income. We agree with the reasoning of the Tax Court and deal with the legal issues briefly. The facts are set forth at greater length in the Tax Court's memorandum opinion, *Catalano v. Comm'r*, 76 T.C.M. (CCH) 1029, 1998 WL 892263 (1998), which we have previously cited with approval. *Ding v. Comm'r*, 200 F.3d 587, 590 (9th Cir.1999).

Catalano first argues that the disallowance of the corporate-level deduction should result in an offsetting adjustment to his individual income because "the individual who is a 100% owner of the Subchapter S Corporation and the S Corporation should be treated as a single taxpayer for tax purposes." Catalano overlooks the fundamental principle that an S corporation is a separate entity from its shareholders. *Ding*, 200 F.3d at 589–90 (9th

Cir.1999). Contrary to Catalano's contention, the Subchapter S Revision Act of 1982 did not alter this principle. *See* James S. Eustice and Joel D. Kuntz, *Federal Income Taxation of S Corporations* ¶ 1.02 (7) (2000) (summarizing changes made by the Subchapter S Revision Act of 1982). The critical fact is that Catalano, as an individual, received lease income from the corporation. The denial of the corporate-level deduction by the Tax Court did not change this situation.

Next, Catalano invokes two doctrines that do not apply to these facts. These are the tax benefit rule and the doctrine of equitable recoupment.

■ The tax benefit rule is a judicially developed doctrine that is designed to relieve some of the inequities that can result from strict adherence to an annual accounting system. *Hillsboro Nat'l Bank v. Comm'r*, 460 U.S. 370, 377, 103 S.Ct. 1134, 75 L.Ed.2d 130 (1983). In an example given in that case, the rule prevented an inequitable tax windfall to the taxpayer. The taxpayer had taken a deduction for an apparently uncollectible debt in one year, only to be repaid when the debtor made an unexpected financial recovery the following year. Ordinarily, the debt repayment in the second year would not be taxable, since it represents a return of capital. Under the tax benefit rule, however, the taxpayer had to include the repayment as income, in order to allow the government to recoup the tax attributable to the improper deduction. *Id.* at 377–79, 103 S.Ct. 1134.

■ The tax benefit rule does not apply to cases in which a deduction is found improper on audit. As the Supreme Court has explained, "Changes on audit reflect the proper tax treatment of items under the facts as they were known at the end of the taxable year. The tax benefit rule is addressed to a different problem-that of events that occur after the close of the taxable year." *Hillsboro*, 460 U.S. at 378 n. 10, 103 S.Ct. 1134. Here, there was no event in a subsequent year that proved the corporate-level deduction improper. Instead, the deduction was held improper on audit. Accordingly, the tax benefit rule does not apply.

■ Catalano next directs our attention to the doctrine of equitable recoupment, but this effort is similarly unavailing. The doctrine of equitable recoupment seeks to avoid the unjust enrichment of either the government or the taxpayer where the statute of limitations otherwise bars relief. *Kolom v. United States*, 791 F.2d 762, 766–67 (9th Cir.1986). It applies only in cases that satisfy three elements. First, a single transaction must be the taxable event to be considered in recoupment. Second, the single transaction must be subject to two taxes based upon inconsistent legal theories. Finally, the statute of limitations must bar recoupment, while either the government's asserted deficiency or the taxpayer's claim for a refund must be timely. *Parker v. United States*, 110 F.3d 678, 683 (9th Cir.1997).

■ We need consider only the second element. The doctrine of equitable recoupment does not apply because we do not have inconsistent legal theories. It was not inconsistent for the Tax Court to deny a corporate-level deduction for the lease payments while requiring Catalano to include his receipt of those payments in his individual income. The corporation and Catalano are separate entities. The tax outcome results from the structure Catalano chose for this transaction.

■ The final issue concerns the Tax Court's imposition of accuracy-related penalties under 26 U.S.C. §§ 6662(a) and (b)(1). These sections provide, in part, that if any portion of an underpayment of tax is attributable to "negligence or disregard of rules or regulations," "there shall be added to the tax an amount equal to 20 percent" of the underpayment which is so attributable. "Negligence" includes "any failure to make a reasonable attempt to comply with the provisions of the [Code],"

and "disregard" includes "any careless, reckless, or intentional disregard." 26 U.S.C. § 6662(c).

Catalano claims that penalties are unwarranted for two reasons. First, he contends that this is an issue of first impression. The nondeductability of expenses for a boat as an entertainment facility is not, however, an issue of first impression. Section 274(a)(1)(B), which strictly disallows the deduction, otherwise allowable, of an item "[w]ith respect to a facility used in connection with" entertainment, amusement, or recreation, was enacted in 1978 for tax years beginning in 1979. *See Fingar v. Comm'r*, 74 T.C.M. (CCH) 1409 (1997). The Tax Court uses the regulations applicable to the pre–1978 statute as guidance for the interpretation of § 274(a)(1)(B). *Harrigan Lumber Co. v. Comm'r*, 88 T.C. 1562, 1565 n. 7, 1987 WL 31365 (1987). These regulations expressly cite yachts, or pleasure vessels, as examples of entertainment facilities. 26 C.F.R. § 1.274–2(e)(2)(i). Therefore, the nondeductability under § 274 of expenses related to vessels such as Catalano's was a settled issue during the years at issue here. There are no issues of first impression that would excuse Catalano from penalties.

As a second reason why penalties should not be assessed, Catalano asserts that he relied on the advice of his accountant. It is true that good faith reliance on professional advice regarding tax laws is a defense. *Collins v. Comm'r*, 857 F.2d 1383, 1386 (9th Cir.1988). But Catalano fails to provide the evidence required to establish this defense. There is no evidence of the professional qualifications of the accountant or his purported expertise; nor is there any evidence suggesting the nature of the advice, if any, that was given. Both are required. *See Allen v. Comm'r*, 925 F.2d 348, 354 (9th Cir.1991); *Howard v. Comm'r*, 931 F.2d 578, 582 (9th Cir. 1991) ("Where no reliable evidence exists in the record suggesting the nature of any advice given, a finding of negligence is not

erroneous."). We therefore affirm the Tax Court's imposition of accuracy-related penalties.

AFFIRMED.