Tom I. LINCIR; Diane C. Lincir, Petitioners—Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent— Appellee.

No. 01–70018.

IRS No. 22934–89.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2002.

Decided Feb. 22, 2002.

Before PREGERSON, RYMER, and
T.G. NELSON, Circuit Judges.

MEMORANDUM *

Tom and Diane Lincir appeal the tax
court's decision upholding the IRS's as-
sessment of negligence penalties under 26

---

* This disposition is not appropriate for publica-
tion and may not be cited to or by the courts
of this circuit except as may be provided by
Ninth Circuit Rule 36–3.

U.S.C. § 6653(a)[1] and increased interest under 26 U.S.C. § 6621(c). They also appeal the tax court's determination that it lacked jurisdiction to hear their claim that the IRS should use its new interest-netting rule when calculating the penalties and increased interest. We have jurisdiction to hear this appeal pursuant to 26 U.S.C. § 7482, and we affirm.

## I. *Negligence Penalties and Increased Interest*

■ The tax court did not clearly err when it held that the Lincirs were liable for the negligence penalties and increased interest.[2] The Lincirs were negligent in relying on the advice of their accountant, Schenkman. For reliance to be reasonable, the advisor must have knowledge of the pertinent facts and expertise in the subject matter of the underlying transaction.[3] Schenkman admitted that he was not an expert in securities or gold trading. He solely relied on the material provided by the promoters when giving advice about the tax consequences of the gold trading program. The Lincirs' contention that they thought Schenkman was an expert is to no avail because they bear the burden of showing that their advisor had the requisite expertise and knowledge.[4] They failed to make such a showing.

■ The Lincirs were also negligent in relying on an advisor who had an economic interest in promoting the investment.[5] The Lincirs should have suspected that Schenkman was not just a disinterested independent advisor because Schenkman introduced the program to them and spoke at the investment seminar.[6] Lincir also admitted that he assumed Schenkman was being compensated by the investment program for doing accounting work associated with the venture. The combination of these facts should have put Lincir on notice that Schenkman had an interest in the program and that Lincir needed to investigate the program independently. The tax court did not clearly err in finding the Lincirs negligent for relying on Schenkman's advice.

1. Section 6653 was repealed by Pub.L. No. 101–239, Title VII, § 7721, 103 Stat. 2106, 2399–400 (1989).

2. *Little v. Commissioner*, 106 F.3d 1445, 1449 (9th Cir.1997) (reviewing for clear error the tax court's decision that upheld additions to tax).

3. *Collins v. Commissioner*, 857 F.2d 1383, 1386 (9th Cir.1988) (requiring that advisor have firsthand knowledge of the venture); *Goldman v. Commissioner*, 39 F.3d 402, 408 (2d Cir.1994) (holding that reliance on an expert is not reasonable when the expert knows nothing about the business in which the taxpayer invested); *Barlow v. Commissioner*, 80 T.C.M. (CCH) 632 (2000) (stating that taxpayer cannot rely on advice of an accountant who knows nothing about the nontax business aspects of the contemplated venture).

4. *Catalano v. Commissioner*, 240 F.3d 842, 845 (9th Cir.2001) (holding that plaintiff failed to provide evidence of professional qualifications or expertise of accountant, which is required to establish defense of reasonable reliance).

5. *Goldman*, 39 F.3d at 408; *Laverne v. Commissioner*, 94 T.C. 637, 652–53, 1990 WL 49004 (1990), *aff'd*, 956 F.2d 274 (9th Cir. 1992) (mem.).

6. *Barlow*, 80 T.C.M. (CCH) 632 ("It is unreasonable for taxpayers to rely on the advice of someone who they should know has a conflict of interest." (citing *Addington v. Commissioner*, 205 F.3d 54, 59 (2d Cir.2000))); *Weitzman v. Commissioner*, 82 T.C.M.(CCH) 419 (2001) (stating that the fact that the advisor introduced the investment to the petitioner should have put petitioner on guard that the advisor was engaged in selling rather than acting as an independent advisor).

## II. *Jurisdiction Regarding Interest–Netting Rule Claims*

 We review de novo the tax court's determination that it lacked subject matter jurisdiction.[7] The tax court does not have jurisdiction to review interest determinations before the taxpayer has paid that interest.[8] Thus, the tax court was correct in holding that it did not have jurisdiction to decide whether the IRS must apply the interest-netting rule when calculating the increased interest penalty before such a penalty has been assessed and paid. The Lincirs argue that they do not want the court to determine the amount of interest but, rather, want the court to decide whether the increased interest penalty provision applies to them. The Lincirs misstate the issue. The tax court has already determined that the Lincirs engaged in a tax motivated transaction that led to a substantial underpayment of taxes, thereby triggering the increased interest penalty. The only question remaining is the amount of the penalty, which is akin to an interest determination. The tax court does not have jurisdiction to decide that issue until the IRS has assessed the penalty and the Lincirs have paid it, which has not yet occurred.

██ The tax court's determination that an issue is not ripe for review is also reviewed de novo.[9] The Lincirs' claim that the IRS should use the interest-netting rule to calculate the negligence penalty is not ripe for review because it is not fit for judicial decision.[10] An agency decision is fit for review if it is a final agency action.[11] There is no final agency action in this case. The IRS has yet to compute the negligence penalty and hence has yet to apply or not to apply the interest-netting rule. While the IRS has indicated to the court that it will not apply the rule, such an indication within a legal brief is not a "definitive statement of an agency's position" such as would be a final rule or regulation.[12] There must be some evidence that the agency has concluded its consideration of the issue.[13] There is no such evidence in this case. Therefore, there was no final agency action, and thus, the issue was not ripe for review. We affirm the decisions of the tax court.

AFFIRMED.

7. *Correia v. Commissioner*, 58 F.3d 468, 469 (9th Cir.1995).

8. *Asciutto v. Commissioner*, 64 T.C.M. (CCH) 877 (1992), *aff'd*, 26 F.3d 108 (9th Cir.1994); *Zfass v. Commissioner*, 118 F.3d 184, 191–92 (4th Cir.1997).

9. *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1434 (9th Cir.1996).

10. *Association of Am. Med. Colleges v. United States*, 217 F.3d 770, 779–80 (9th Cir.2000).

11. *Id.* at 780.

12. *See id.* (noting that one factor in determining ripeness is whether the administrative action definitively states an agency's position).

13. *See Whitman v. American Trucking Ass'ns, Inc.*, 531 U.S. 457, 477–79, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) (holding that EPA implementation policy was final agency action because EPA published the policy in the Federal Register within the preamble to air quality regulations and stated in that preamble that it had settled on a new policy, which would immediately apply to the implementation of ozone standards); *Glavin v. Clinton*, 19 F.Supp.2d 543, 547–48 (E.D.Va.1998), *aff'd sub nom., Department of Commerce v. United States House of Representatives*, 525 U.S. 316, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999) (holding that statistical sampling method for 2000 census was final agency action because agency acknowledged its finality in formal written reports to Congress and in the Appropriations Act of 1998).