**Edward YING, Petitioner–Appellee, Cross–Appellant,**

**and**

**Felilu Ying, Petitioner–Appellee,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant, Cross–Appellee.**

**Nos. 930, 977, Dockets 93–4155, 93–4185.**

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1993.

Decided May 24, 1994.

Charles Bricken, U.S. Dept. of Justice, Tax Div., Washington, DC (Michael L. Paup, Acting Asst. Atty. Gen., Gary R. Allen, Ernest J. Brown, of counsel), for respondent-appellant, cross-appellee.

Jared J. Scharf, White Plains, NY (Morton A. Smith, Vincent R. Barella, Hall, Dickler, Lawler, Kent & Friedman, White Plains, NY, of counsel), for petitioner-appellee, cross-appellant Edward Ying and for petitioner-appellee Felilu Ying.

Before: WINTER and PRATT, Circuit Judges, and WARD,* District Judge.

GEORGE C. PRATT, Circuit Judge:

This case arises out of different income tax treatments of a husband and a wife, both of whom were permanent resident aliens in the United States. The United States Tax Court, Laurence J. Whalen, *Judge,* held that the husband was ineligible for a tax exemption under § 893 of the Internal Revenue Code ("IRC"), because he had filed a waiver under § 247(b) of the Immigration and Nationality Act ("INA"), but that the wife, who had filed an identical waiver, was eligible for the exemption. *Ying v. Commissioner of Internal Revenue,* 99 Tax Ct.Rep. (CCH) 48,452, 1992 WL 208182 (1992). For the reasons set forth below, we affirm the Tax Court's judgment with respect to the husband, but reverse with respect to the wife.

## DISCUSSION

The Immigration and Nationality Act of 1952 established " 'a comprehensive and complete code covering all aspects of admission of aliens to this country, whether for business or pleasure, or as immigrants seeking to become permanent residents.' " *Toll v. Moreno,* 458 U.S. 1, 13, 102 S.Ct. 2977, 2984, 73 L.Ed.2d 563 (1982) (quoting *Elkins v. Moreno,* 435 U.S. 647, 664, 98 S.Ct. 1338, 1348, 55 L.Ed.2d 614 (1978)). An alien is defined as

* Honorable Robert J. Ward, Senior United States District Judge for the Southern District of New York, sitting by designation.

"any person not a citizen or national of the United States". 8 U.S.C. § 1101(a)(3) (1982). Aliens are further categorized as either immigrants or nonimmigrants. While immigrants are admitted according to a system of preferences, *see* 8 U.S.C. § 1153, and are subject to numerical limits by country, *see* 8 U.S.C. § 1151, nonimmigrants generally enter for a limited period and for a specific purpose. *See Int'l Longshoremen's & Warehousemen's Union v. Meese,* 891 F.2d 1374, 1380 (9th Cir.1989). Immigrants are generally aliens who apply for permanent admission to the United States, *see id.,* whereas most nonimmigrants are precluded from establishing a domicile in the United States. *See Toll,* 458 U.S. at 14, 102 S.Ct. at 2984. There is a statutory presumption that all aliens are immigrants. *See* 8 U.S.C. § 1184(b).

Nonimmigrants who are employees of designated international organizations are entitled to certain privileges, exemptions, and immunities by virtue of their occupational status. For example, congress has allowed them to establish domicile in the United States. *Toll,* 458 U.S. at 14, 102 S.Ct. at 2984. In addition, they typically do not have to pay federal and, in many instances, state or local taxes on the salaries paid by the international organizations. *Id.* Where this tax exemption was not included as part of an international agreement or treaty, congress provided for it in the International Organizations Immunities Act ("IOIA"). *Id.* at 15–16, 102 S.Ct. at 2985–2986 (citing IOIA § 4(b), 59 Stat. 669, 670 (1945), amending IRC § 116(h)(1)).

> The exemption provides in pertinent part: Wages, fees, or salary of any employee of a foreign government *or of an international organization* * * * received as compensation for official services to such * * * organization shall not be included in gross income and shall be exempt from taxation under this subtitle if—
>
> (1) such employee is not a citizen of the United States, or is a citizen of the Republic of the Philippines (whether or not a citizen of the United States) * * *

IRC § 893(a)(1) (1988).

While the derivation of this unusual tax-exemption provision does not affect our anal-ysis of the statute's application to this case, we take a moment to mention its historical underpinnings here. The predecessor of IRC § 893(a) was § 116(h) of the Internal Revenue Code of 1939, which provided reciprocal exemptions for employees of foreign governments in the United States. Pub.L. No. 76–1, 53 Stat. 1, 50 (1939). However, at that time the Commonwealth of the Philippines was not yet an independent, self-governing country, *see* Philippine Independence Act of 1934, Pub.L. No. 73–127, § 10(a), 48 Stat. 456, 463 (withdrawal of United States sovereignty 10 years after inauguration of new government); *see also Olegario v. United States,* 629 F.2d 204, 209 (2d Cir.1980) (independence scheduled for 1946), *cert. denied,* 450 U.S. 980, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981), and therefore could not be considered a "foreign government" as contemplated by § 116(h).

Because the United States wanted to provide benefits reciprocal to those the Philippines was extending to United States officers and employees on duty in the Philippines, in 1942 congress extended the tax exemption to employees of the Commonwealth of the Philippines. It amended the exemption provision by adding "or of the Commonwealth of the Philippines" after every mention of "foreign government" and by adding "or is a citizen of the Commonwealth of the Philippines" after "[i]f such employee is not a citizen of the United States." *See* Revenue Act of 1942, § 149, Pub.L. No. 77–753, 56 Stat. 798, 842.

With the passage of the International Organizations Immunities Act in 1945, IRC § 116(h) was again amended, this time to extend the exemption to include employees of international organizations. Pub.L. No. 79–291, 59 Stat. 669, 670 (1945). By providing this tax exemption, the federal government "undoubtedly sought to benefit the employing international organizations by enabling them to pay salaries not encumbered by the full panoply of taxes, thereby lowering the organizations' costs." *Toll,* 458 U.S. at 16, 102 S.Ct. at 2985.

Finally, the Internal Revenue Code of 1954 renumbered § 116(h) as § 893 and made

some minor changes. Because by this time, the Philippines had gained its independence, the specific references to the Commonwealth of the Philippines as an alternative to "foreign government" were deleted, and the sole remaining citation to the "Commonwealth of the Philippines" was changed to "Republic of the Philippines". The 1954 version of the exemption provision is the one that is before us today.

Felilu and Edward Ying initially became eligible for the tax exemption when they gained employment with the United Nations, one of the "international organizations" contemplated by the statute. *See* notes following 22 U.S.C.A. § 288 (1990). Neither Felilu nor Edward was a citizen of the United States during any of the taxable years in issue or at any time prior to those years. Felilu, a citizen of the Republic of the Philippines, was employed as an accounting clerk with the United Nations from 1968 to 1985. Edward, a citizen of Jamaica, was employed by UNICEF, an agency of the United Nations, preparing budgets for projects in various countries from 1969 to 1985.

For those who enter the country as immigrants, but either at the time of entry or subsequently acquire an occupational status entitling them to nonimmigrant status, the INA requires the Attorney General to adjust their status to "nonimmigrant". *See* INA § 247(a), 8 U.S.C. § 1257(a); *see also Nauck v. Immigration & Naturalization Serv.*, 475 F.2d 1008, 1009 (2d Cir.1973). Because only immigrants may be "permanent residents" and permanent residence is a requirement of naturalization, *see* 8 U.S.C. § 1427(a), immigrants who want to become naturalized United States citizens do not want to lose their "immigrant" status. Therefore, INA § 247(b) provides:

> The adjustment of status required by subsection (a) of this section shall not be applicable in the case of any alien who requests that he be permitted to retain his status as an immigrant and who, in such form as the Attorney General may require, executes and files with the Attorney General *a written waiver of all rights, privileges, exemptions, and immunities under any law* or any executive order *which*

*would otherwise accrue to him* because of the acquisition of an occupational status entitling him to a nonimmigrant status under paragraph 15(A), (E), or (G) of section 1101(a) of this title.

8 U.S.C. § 1257(b) (emphases added).

The "written waiver" is INS Form I–508, which is titled "Waiver of Rights, Privileges, Exemptions and Immunities". In 1973 and 1974 respectively, Felilu and Edward executed and filed this waiver in order to attain permanent residence status. The waiver read:

> I, (name) _____ believing that I have an occupational status entitling me to a nonimmigrant classification under paragraph * * * (15)(G) (International Organization Representative), of Section 101(a) of the Immigration and Nationality Act and desiring to acquire and/or retain the status of an alien lawfully admitted for permanent residence, do hereby waive *all* rights, privileges, exemptions and immunities which would otherwise accrue to me under *any law* or executive order *by reason of such occupational status.*

(emphases added).

This case turns upon whether or not Felilu and Edward waived their eligibility for the international-organization tax exemption by signing the above waiver. On September 11, 1987, the Commissioner of Internal Revenue, believing that Felilu's and Edward's waivers had disqualified them from the tax exemption, sent them a notice that on their joint returns they had underpaid their income taxes for fiscal years 1981 to 1985. The Commissioner alleged that the Yings had failed to report monies earned through their employment with the United Nations, which was taxable income, and determined that they were liable for self-employment tax on such monies. The notice assessed significant tax deficiencies against them for each of the five years, as well as additions for fraud and delinquency penalties. *See* IRC §§ 6653(b)(1), (b)(2), (d).

The Yings filed a petition with the United States Tax Court seeking a redetermination of the deficiencies and additions. They claimed that they had properly reported all

of their taxable income and that as salaried employees, they were not liable for self-employment tax. Furthermore, they claimed that both of their salaries from the United Nations were tax exempt, that they had overreported Felilu's income, and that they were therefore entitled to a refund for each of the five years at issue.

The Yings moved for summary judgment, alleging that because their income came from an international organization and they were not citizens of the United States, their income was exempt under IRC § 893(a)(1). The Commissioner then cross-moved for partial summary judgment, seeking a determination that the income received by the Yings from the United Nations and UNICEF from 1981 to 1985 was "includable in gross income in such years and is subject to United States taxation in such years". The Commissioner asserted that by signing the waivers, both Felilu and Edward had waived the international-organization tax exemption otherwise available to them.

In an opinion dated August 31, 1992, the Tax Court granted Felilu's motion for summary judgment, but denied Edward's and the Commissioner's motions for summary judgment. It held that because Felilu Ying was a Philippine citizen, her income was exempt from taxation, despite her filing of the waiver. However, it held that Edward Ying, as a citizen of Jamaica, had waived his eligibility for the exemption by filing the waiver.

The parties settled all of the issues that remained outstanding, and the Tax Court entered its final decision on April 30, 1993. Both Edward Ying and the Commissioner now appeal.

A. *Edward Ying.*

█ Relying on the text of INA § 247(b), Edward argues that the waiver he executed applies only to rights, privileges, exemptions, and immunities arising out of laws that entitled him to a nonimmigrant status under paragraph (15)(A), (E), or (G) of INA § 1101(a), *see* 8 U.S.C. § 1257(b), and that the international-organization tax exemption is not among the laws that entitled him to nonimmigrant status.

We disagree. The plain language and the legislative history of the statute authorizing the waiver, as well as the related regulations, indicate that the tax exemption is among the "rights, privileges, exemptions, and immunities" that Edward relinquished by executing the waiver.

Turning to paragraph 15(G) of INA § 1101(a), which is explicitly mentioned in both the waiver and its authorizing statute, we note that it defines "immigrant" as every alien except, *inter alia,* officers or employees of an "international organization entitled to enjoy privileges, exemptions and immunities as an international organization under the International Organizations Immunities Act". 8 U.S.C. § 1101(a)(15)(G)(i), (iv). The tax-exemption provision at issue was enacted as part of IOIA and was codified as part of the Internal Revenue Code. *See* IOIA § 4, 59 Stat. at 670. Because the tax exemption was part of the law that entitled Edward to a nonimmigrant status, namely the IOIA, it is clearly among the exemptions contemplated by the waiver.

The legislative history of INA § 247 demonstrates that congress intended the waiver to put the affected "nonimmigrants" in a position consistent with the assumption of responsibilities of United States citizenship. According to the House Report, the waiver was

intended to cover the situation where aliens who have entered as immigrants obtain employment with * * * international organizations * * *. Normally, they would be classified as nonimmigrants and because of the nature of their occupation, would be entitled to certain privileges, immunities, and exemptions. *The committee feels that it is undesirable to have such aliens continue in the status of lawful permanent residents and thereby become eligible for citizenship, when, because of their occupational status they are entitled to certain privileges, immunities, and exemptions which are inconsistent with an assumption of the responsibilities of citizenship under our laws.* Such an adjustment shall not be required if the alien executes an effective waiver of all rights, privileges, exemptions, and immunities un-

der any law or any Executive order which would otherwise accrue to him because of his occupational status.

House Report No. 1365, 82d Cong., 2d Sess., *reprinted in* 1952 U.S.C.C.A.N. 1653, 1719 (emphasis added). Because no one would dispute that paying taxes is a primary "responsibility" of United States citizenship, an exemption from income tax is necessarily "inconsistent" with that responsibility.

We note here that over forty years ago the Attorney General came to a similar conclusion. In an opinion rendered one year after the passage of the INA, he wrote of the waiver:

> [I]t is clear that the Congress intended to deprive immigrant aliens employed in the international organizations * * * of the privileges and exemptions resulting from the occupational status which would not be equally available to American citizens similarly situated.

41 Op.Atty.Gen. 131, 136 (1953). The Attorney General then concluded that the tax exemption was an exemption that an immigrant alien waives when he files the waiver under INA § 247. *Id.* at 137.

Finally, the regulations promulgated under the tax-exemption provision provide further support for this position:

> *Except to the extent that the exemption is limited by the execution and filing of the waiver provided for in section 247(b) of the [INA]* * * * wages, fees or salary of any officer or employee of an international organization * * * received as compensation for official services to the international organization is exempt from Federal income tax.

Treas.Reg. § 1.893–1(b)(1) (emphasis added). The regulations further state that an employee of an international organization who executes "the waiver provided for in section 247(b) of the [INA] thereby waives the exemption [for employees of international organizations]." Treas.Reg. § 1.893–1(b)(4).

Because we hold that the international-organization tax exemption is among the exemptions Edward waived by filing his INA § 247(b) waiver, we affirm the Tax Court's decision with respect to Edward Ying.

**B. *Felilu Ying.***

■ Discerning the effect of the waiver is more difficult for Felilu than for Edward, because Felilu was a Philippine citizen and the tax exemption provision specifically mentions citizens of the Republic of the Philippines.

The Tax Court held that Felilu's waiver did not render her ineligible for the tax exemption. In its analysis of the exemption's peculiar language—"if [ ] such employee is not a citizen of the United States, or is a citizen of the Republic of the Philippines (whether or not a citizen of the United States)"—the Tax Court concluded that the tax exemption was available to certain United States citizens, namely those who were *also* citizens of the Republic of the Philippines. *Ying,* 99 Tax Ct.Rep. (CCH) at 5123. Because it determined that the waiver applied "only to those rights and privileges which are not available to American citizens", *id.* at 5122, and that the tax exemption was available to American citizens who were also Philippine citizens, the Tax Court held that the exemption could not be waived by citizens of the Republic of the Philippines:

> [I]n the case of an individual who is a citizen of the Republic of the Philippines, * * * the exemption is not "inconsistent with an assumption of the responsibilities of citizenship". This is true because section 893 permits an American citizen, similarly situated, to enjoy the benefits of section 893.

*Id.* at 5123 (citations omitted).

We agree with the Tax Court that the purpose of the waiver is to place the immigrant in the same position that she would be in if she were a United States citizen. As noted previously, this was also the opinion of the Attorney General. *See* 41 Op.Atty.Gen. at 137–38 (waiver "should result in placing the employee of an international organization * * *, who happens to be an immigrant, in a position of parity with his fellow-American employee of the same organization by allowing the immigrant employee no greater privileges in connection with the employment than an American citizen similarly employed").

We disagree, however, with the Tax Court's use of a dual United States–Philippine citizen as the model for a "similarly situated American". It is possible that such a dual citizen might be eligible for the international-organization tax exemption despite filing the waiver, but we need not decide that question here. For the relevant tax years, Felilu was a citizen only of the Republic of the Philippines and was not a citizen of the United States.

Although people who are born in the United States and subsequently move to the Philippines might qualify as dual United States–Philippine citizens, *see, e.g., Jalbuena v. Dulles,* 254 F.2d 379, 381 (3d Cir.1958); *Petition of Bautista,* 183 F.Supp. 271, 274 (D.Guam 1960), Felilu does not and cannot fall into that category, because she was not born in the United States. Therefore, the appropriate inquiry is not whether the exemption is a benefit that a dual United States–Philippine citizen would receive, but whether the exemption is a benefit that Felilu would receive if she were a United States citizen.

For Felilu to become a United States citizen, she must follow the naturalization process set forth in the INA. One requirement of naturalization is to "renounce and abjure absolutely and entirely all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which the applicant was before a subject or citizen". 8 U.S.C. § 1448(a)(2). Therefore, Felilu would have to renounce her Philippine citizenship in order to become a United States citizen. It is clear that if she had been a United States citizen employed by the United Nations, she would not have qualified for the tax exemption.

In 1968, Felilu became eligible for the tax exemption, because she was an employee of an international organization designated by the IOIA and she was a citizen of the Philippines. When she signed the INA § 247(b) waiver in 1973, however, she waived all rights, privileges, exemptions, and immunities that accrued to her by reason of her occupational status. The tax exemption, which is dependent upon a taxpayer's occupational status, was one such exemption.

We hold that Felilu's INA § 247(b) waiver had the same effect as Edward's identical waiver. Both Felilu and Edward waived their eligibilities for the tax exemption provided by IRC § 893(a) when they executed and filed the waivers.

## CONCLUSION

With respect to Felilu Ying, the Tax Court's grant of summary judgment is reversed and the case is remanded for further proceedings. In all other respects the decision of the Tax Court is affirmed.