142 T.C. No. 22

UNITED STATES TAX COURT

CLIFFORD A. ABRAHAMSEN AND SOLE K. ABRAHAMSEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20466-11.                     Filed June 9, 2014.

I.R.C. sec. 893 excludes from gross income and exempts from taxation income received by an employee of a foreign government or international organization if certain conditions are met. The I.R.C. sec. 893 exemption can be waived, and it must be waived by a person who wishes to become a permanent resident of the United States. The exemption does not apply to income received by a permanent resident after filing the waiver. Sec. 1.893-1(b)(5), Income Tax Regs.

P-W entered the United States in 1983 to work for Finland's Permanent Mission to the United Nations (Mission) in New York. She left the Mission to work for a bank and, while employed there, obtained U.S. permanent resident status. As a condition of obtaining that status she executed, in 1992, a waiver of rights, privileges, exemptions, and immunities otherwise available to her by virtue of her occupation. In 1996 she recommenced employment with the Mission and remained employed by the Mission throughout the years at issue.

Ps did not report as income the wages the Mission paid to P-W during 2004-09. Ps claim that her wages were exempt from taxation pursuant to I.R.C. sec. 893, the U.S.-Finland tax treaty, the Vienna Convention on Diplomatic Relations, the Vienna Convention on Consular Relations, and the International Organizations Immunities Act.

1. Held: I.R.C. sec. 893 does not apply to wages P-W received from the Mission during 2004-09 because she had previously executed a valid waiver of rights, privileges, exemptions, and immunities.

2. Held, further, neither the U.S.-Finland tax treaty, the Vienna Convention on Diplomatic Relations, the Vienna Convention on Consular Relations, nor the International Organizations Immunities Act provides an income tax exemption to permanent U.S. residents working in nondiplomatic positions for international organizations.

Stephen M. Rosenberg and Richard B. Feldman, for petitioners.

Jane J. Kim, for respondent.

OPINION

LAUBER, Judge: This case is before the Court on the parties' cross-motions for summary judgment under Rule 121.[1] The issues for decision are:

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the tax years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

(1) whether Ms. Abrahamsen's wages for 2004-09 are exempt from Federal income tax; and (2) whether petitioners are liable for section 6662 accuracy-related penalties. Petitioners resided in New York when they petitioned the Court.

Background

In 1983 Ms. Abrahamsen, a Finnish citizen, came to New York to work for Finland's Permanent Mission to the United Nations (Mission). The Mission is Finland's official diplomatic delegation to the United Nations. Ms. Abrahamsen entered the U.S. on a G-1 visa, which is issued to government officials and employees entering the U.S. as "nonimmigrants" to work for organizations such as the United Nations. See 8 U.S.C. sec. 1101(a)(15)(G)(i) (2006); 22 C.F.R. sec. 41.12 (1983). She was employed by the Mission in an administrative support role.

Ms. Abrahamsen left the Mission in 1985 and began working for the New York branch of Kansallis-Osake-Pankki (Kansallis), a Finnish bank. She apparently held an E-1 visa while initially employed with Kansallis. An E-1 visa is known as a "treaty trader" visa and, like a G-1 visa, treats its holder as a "nonimmigrant" for immigration law purposes. See 8 U.S.C. sec. 1101(a)(15)(E); 22 C.F.R. sec. 41.12. Ms. Abrahamsen was employed by Kansallis from 1985 to 1996.

On January 29, 1992, Ms. Abrahamsen obtained permanent resident status in the United States. As a condition of obtaining that status, she executed U.S. Citizenship and Immigration Services (USCIS) Form I-508, Waiver of Rights, Privileges, Exemptions and Immunities. By signing Form I-508, Ms. Abrahamsen acknowledged that she was then employed in an occupation under which she had nonimmigrant status and declared that she desired "to acquire and/or retain the status of an alien lawfully admitted for permanent residence." She affirmed by signing this form that she agreed to "waive all rights, privileges, exemptions and immunities which would otherwise accrue to [her] under any law or executive order by reason of [her] occupational status."[2]

Ms. Abrahamsen recommenced employment with the Mission apparently during the spring of 1996. She worked for the Mission in various capacities including secretary (May 1996--May 2004), adviser (May 2004--April 2009), and attaché (April 2009--present). The United Nations did not notify the United States

---

[2]There is some uncertainty concerning the type of visa Ms. Abrahamsen held at various times. Petitioners say that she entered the United States on a G-1 visa, whereas respondent says that she had an E-1 visa by the time she obtained permanent resident status. Quite possibly both parties are correct; in any event, her immigration status during these earlier years is immaterial to our analysis. The parties agree that she was a permanent resident during the tax years at issue, and the Form I-508 that she signed in 1992 would waive her nonimmigrant rights regardless whether she previously held a G-1 or an E-1 visa.

that she was holding a diplomatic title during the years at issue, and her name did not appear on the List of Officers Entitled to Diplomatic Privileges and Immunities that is maintained by the U.S. Mission to the United Nations.

Petitioners did not report as income for 2004-09 the wages that Ms. Abrahamsen received from the Mission. After examining petitioners' returns, the Internal Revenue Service (IRS or respondent) mailed petitioners timely notices of deficiency for 2004-09. These notices increased petitioners' income by including Ms. Abrahamsen's wages from the Mission and determined a section 6662 accuracy-related penalty for each year. Petitioners timely petitioned this Court seeking redetermination of the deficiencies and penalties.

The parties have filed cross-motions for summary judgment. Petitioners contend that Ms. Abrahamsen's wages from the Mission were exempt from taxation pursuant to section 893 and provisions of international law. Respondent contends that Ms. Abrahamsen's wages are taxable and that petitioners are liable for accuracy-related penalties.

## Discussion

I.   Summary Judgment

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73,

74 (2001). Either party may move for summary judgment upon all or any part of the legal issues in controversy. Rule 121(a). A motion for summary judgment or partial summary judgment will be granted only if it is shown that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. See Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). The moving party bears the burden of proving that there is no genuine dispute as to any material fact, and the Court views all factual materials and inferences in the light most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985).

We agree that summary judgment is appropriate as to the taxability of Ms. Abrahamsen's wages, and we will grant respondent's motion and deny petitioners' motion insofar as it relates to this issue. With respect to the penalties, petitioners contend that they reasonably and in good faith relied upon the advice of tax professionals to complete their returns. We conclude that petitioners' ability to satisfy the section 6664(c)(1) "reasonable cause" exception to the accuracy-related penalty presents a triable issue that precludes summary judgment. We will therefore deny both motions for summary judgment insofar as they concern the penalties.

II.    Taxability of Wages

Alien individuals who are lawful permanent residents of the United States are treated as "resident aliens" of the United States. Sec. 7701(b)(1). "Resident aliens, like other individual taxpayers, must include compensation for services, such as wages, in their gross income." Harrison v. Commissioner, 138 T.C. 340, 343 (2012). Because Ms. Abrahamsen was a resident alien during the tax years at issue, her wages would be included in gross income under general principles. Petitioners contend that her wages were exempt from Federal income tax under section 893 or provisions of international law.

A.    Section 893

Section 893 excludes from gross income (and exempts from taxation) income received by an employee of a foreign government or international organization as compensation for official services performed for that entity. To qualify for this exemption, the individual must not be a U.S. citizen; the services performed must be similar to services performed by U.S. Government employees abroad; and the foreign government must provide a corresponding exemption to U.S. Government employees performing similar services in that country. Sec. 893(a).

The exemption afforded by section 893 can be waived, however, and a non-resident alien must waive it if she wishes to become a permanent resident of the

United States.  See 8 C.F.R. sec. 245.1(b)(9) (1992).  To waive this exemption, an individual executes and files with the Attorney General the relevant waiver form specified in the Immigration and Nationality Act, Pub. L. No. 82-414, sec. 247(b), 66 Stat. at 218 (1952) (current version at 8 U.S.C. sec. 1257(b) (2012)).  See sec. 1.893-1(b)(4), Income Tax Regs.  The required form is USCIS Form I-508.  The exemption from taxation provided by section 893 does not apply to income that an individual receives after filing Form I-508.  See sec. 1.893-1(b)(5), Income Tax Regs.

Petitioners originally argued that Ms. Abrahamsen had not waived her section 893 exemption even though such a waiver was required in order to secure the "permanent resident" status she acquired in 1992.  However, respondent has produced a copy of the Form I-508 that Ms. Abrahamsen executed on January 29, 1992, in connection with obtaining that status.  Petitioners do not dispute that this form is genuine or that the signature on the form is Ms. Abrahamsen's.

Petitioners nevertheless argue that the waiver should not be enforced given what they term "the unique facts of this case."  We do not find the facts petitioners recite to be unique.  Petitioners claim that English is Ms. Abrahamsen's second language; that she signed the waiver more than 20 years ago; that Form I-508 was difficult to understand; and that she did not appreciate the long-term effects of

signing the waiver. We expect that many foreign nationals seeking permanent resident status in the United States could advance similar arguments. If such arguments were sufficient to nullify the Forms I-508 they signed, the carefully constructed waiver procedure set forth in the regulations would become the exception rather than the rule.

More importantly, petitioners cite no statute or judicial precedent to support their assertion that we can ignore a validly executed waiver. We accordingly conclude that the waiver was effective as of January 29, 1992. All income that Ms. Abrahamsen received from the Mission after that date is ineligible for the section 893 exemption and is subject to Federal income tax unless some other exemption applies. See Ying v. Commissioner, 99 T.C. 273, 293 (1992) (taxpayer "became ineligible for the benefits under section 893 when he filed his waiver under section 247(b) of the Immigration and Nationality Act"), aff'd in part, rev'd in part, 25 F.3d 84 (2d Cir. 1994).

B.      U.S.-Finland Tax Treaty

Petitioners alternatively contend that Ms. Abrahamsen's wages from the Mission are tax exempt pursuant to the U.S.-Finland income tax treaty. See Convention for the Avoidance of Double Taxation With Respect to Taxes on Income, U.S.-Fin., Sept. 21, 1989, Tax Treaties (CCH) para. 2945 (Treaty).

Specifically, petitioners contend that tax exemption is afforded by article 19 of the Treaty, which concerns remuneration received for "Government Service."

Article 1, paragraph 3 of the Treaty contains a "saving clause" that overrides certain of its other provisions. This saving clause provides that "[n]otwithstanding any provision of the [Treaty] except paragraph 4, a Contracting State may tax a person who is treated as a resident under its taxation laws." Treaty, Tax Treaties (CCH) para. 2945.01, at 73,011. Article 1, paragraph 4 states that benefits conferred under article 19, dealing with government service, are unaffected by the saving clause, but only in the case of "individuals who are neither citizens of, nor lawful permanent residents in, that State." Ibid.

During the years at issue Ms. Abrahamsen was a "lawful permanent resident in" the United States, and the exclusion set forth in article 1, paragraph 4, does not apply. The saving clause is thus operative, and it authorizes the United States to tax any person "who is treated as a resident under its taxation laws." As a permanent resident, Ms. Abrahamsen was a "resident" for U.S. tax purposes. See sec. 7701(b)(1)(A)(i). Thus, regardless whether her compensation from the

Mission was derived from "Government Service" within the meaning of article 19, her wages were subject to Federal income tax under the saving clause.[3]

C.     Diplomatic Status

Petitioners argue that Ms. Abrahamsen's wages were exempt from taxation pursuant to other provisions of international law. Central to these arguments is the assertion that Ms. Abrahamsen held diplomatic status for the years at issue. Petitioners provide no support for this assertion. Rather, they simply describe her duties and conclude that her "position with the Mission is clearly diplomatic in nature."

The evidence respondent provided shows this assertion to be incorrect, at least for U.S. tax purposes. During the relevant period Ms. Abrahamsen was employed by the Mission as either an adviser or an attaché. The United Nations did not notify the United States that she held a diplomatic title with regard to either position, and her name did not appear on the List of Officers Entitled to Diplomatic Privileges and Immunities maintained by the U.S. Mission to the United

---

[3]The Treaty was amended in 2006. See 2006 Protocol to the 1989 U.S.-Fin. Income Tax Treaty, May 31, 2006, Tax Treaties (CCH) para. 2946. This amendment, which applies to petitioners' Federal income tax liabilities for 2008-09, see id. art. IX, does not affect the analysis. Under the 2006 amendment, the United States may tax Ms. Abrahamsen as a "resident." See id. arts. I and II. Because she was a U.S. permanent resident during 2008-09, she is covered by the saving clause. See id. art. I(4) and (5).

Nations. Concluding as we do that Ms. Abrahamsen did not have diplomatic status or rank, we address petitioners' arguments briefly.

Petitioners posit that article 34 of the Vienna Convention on Diplomatic Relations (VCDR) exempts Ms. Abrahamsen's wages from taxation. Convention on Diplomatic Relations and Optional Protocol on Disputes, U.S.-Vienna, Apr. 18, 1961, 23 U.S.T. 3227. However, article 34 applies only to a "diplomatic agent." Article 1 of the VCDR defines a "diplomatic agent" as a "head of the mission or a member of the diplomatic staff of the mission." "Diplomatic staff" is defined to mean "the members of the staff of the mission having diplomatic rank." Because Ms. Abrahamsen did not have diplomatic rank, she was not a "diplomatic agent" under the VCDR, and article 34 therefore did not exempt her wages from taxation.[4]

Petitioners next argue that Ms. Abrahamsen's wages are exempt from tax pursuant to the International Organizations Immunities Act (IOIA). See 22 U.S.C.

---

[4]There is no merit to petitioners' suggestion that article 49 of the Vienna Convention on Consular Relations (VCCR) exempts Ms. Abrahamsen's wages from U.S. tax. The VCCR does not apply to the Mission. See City of New York v. Permanent Mission of India to United Nations, 533 F. Supp. 2d 457, 460 (S.D.N.Y. 2008) (holding that "[t]he tax status of the consular portions of the premises is controlled by Article 32 of the Vienna Convention on Consular Relations" and that "[t]he tax status of the U.N. Mission portions of the premises is controlled by the Vienna Convention on Diplomatic Relations"), rev'd on other grounds, 618 F.3d 172 (2d Cir. 2010).

sec. 288d (2006). Even if the IOIA applied to Ms. Abrahamsen, which respondent disputes, the law does not confer the benefits petitioners claim. Under the IOIA, employees of foreign governments and international organizations are "immune from suit and legal process relating to acts performed by them in their official capacity and falling within their functions as such representatives, officers, or employees." 22 U.S.C. sec. 288d(b). This case arises from Ms. Abrahamsen's earning income within the United States as a permanent resident of the United States. She is not being subjected to liability for any act performed in her official capacity, and the earning of income is not part of her official function as a representative of Finland to the United Nations. Therefore, the IOIA does not exempt her wages from Federal income tax. See United States v. Coplon, 84 F. Supp. 472, 474 (S.D.N.Y. 1949) (IOIA "does not confer general diplomatic status immunity" but confers immunity on U.N. officers and employees only "for the category of acts performed by them in their official capacity and falling within their functions as such officers or employees"); sec. 1.893-1(b)(3), Income Tax Regs. (quoting the relevant provisions of the IOIA, including that "[n]o person shall, by reason of the provisions of this title, be considered as receiving diplomatic status * * * other than such as are specifically set forth herein").

III.    Penalties and Interest

Petitioners argue that, even if Ms. Abrahamsen's income is subject to tax, the Court should "vacate assessed penalties and interest." As noted earlier, we will deny both parties' motions for summary judgment insofar as they address petitioners' liability for the section 6662(a) penalty. It is well settled that this Court's deficiency jurisdiction generally does not extend to statutory interest. Lincir v. Commissioner, 115 T.C. 293, 297 (2000), aff'd, 32 Fed. Appx. 278 (9th Cir. 2002). Section 6404(h)(1), which gives us jurisdiction of actions brought within 180 days after the IRS mails the taxpayer a final determination not to abate interest, has no application here.

IV.    Conclusion

Because petitioners have not shown that Ms. Abrahamsen's wages are exempt from taxation, they must be included in petitioners' gross income for the years at issue. We will therefore grant respondent's motion and deny petitioners' motion insofar as they relate to this issue. Finding there to be a genuine dispute of material fact as to whether the reasonable cause exception to the section 6662

accuracy-related penalty applies, we will deny both parties' motions for summary judgment insofar as they address that point.

An appropriate order will be issued.