# United States Tax Court

T.C. Memo. 2026-35

ESTATE OF KURT A. AMPLATZ, DECEASED, SECURITY BANK &
TRUST COMPANY, PERSONAL REPRESENTATIVE,
Petitioner(s)

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 15443-23.                          Filed April 23, 2026.

————

*Christopher H. Yetka*, for petitioner(s).

*Timothy M. Peel, Deborah R. Kelessidis, Shannon C. Bambery*, and
*Naseem Jehan Khan*, for respondent.


## MEMORANDUM OPINION

FUNG, *Judge*: This case is before the Court on the parties' Cross-Motions for Partial Summary Judgment under Rule 121.[1] Security Bank & Trust Co. (Security Bank), as personal representative for the Estate of Kurt A. Amplatz (Estate), challenges a Notice of Deficiency issued by the Internal Revenue Service (respondent) determining an estate tax deficiency of $5,686,714 and a penalty under section 6662 of $2,423,200. The deficiency arises from adjustments to the value of certain assets and expenses reported on the Estate's Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return.

————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]**    The Estate argues that partial summary judgment is appropriate because respondent failed to comply with the requirements of section 7517 and the Estate established reasonable cause under section 6664(c). Respondent argues that he is entitled to partial summary judgment because he complied with sections 6751(b)(1) and 7517. For the reasons set forth below, we will deny the Estate's Motion for Partial Summary Judgment. We will grant respondent's Motion for Partial Summary Judgment with respect to section 6751(b)(1), and we will deny respondent's Motion for Partial Summary Judgment with respect to section 7517.

*Background*

We derive the following facts from the parties' First Stipulation of Facts, Second Stipulation of Facts, pleadings, Motion papers, and the attached Memoranda, Declarations, and Exhibits. *See* Rule 121(c). These facts are stated solely for the purpose of deciding the parties' Cross-Motions and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Kurt A. Amplatz lived in Minnesota when he passed away, and Security Bank's principal place of business was in Minnesota when the Petition was timely filed. The parties agree that this case is appealable to the U.S. Court of Appeals for the Eighth Circuit.

I.    *KA Medical, LLC*

In 2014 Kurt A. Amplatz formed KA Medical, LLC (KA Medical), a Minnesota limited liability company that designed, manufactured, and sold medical devices. Mr. Amplatz created three trusts: (1) the Kurt A. Amplatz Funding Trust (Funding Trust), (2) the KA Medical Trust (Medical Trust), and (3) the Kurt A. Amplatz Revocable Trust (Revocable Trust). Security Bank serves as trustee for the Revocable Trust and successor trustee for the Medical Trust and the Funding Trust. Mr. Amplatz was the original settlor of the Funding Trust. Through the Medical Trust, Mr. Amplatz held 50,000 voting and 450,000 nonvoting membership units in KA Medical. The Medical Trust contributed $500,000 to KA Medical in exchange for the 500,000 membership units. As of July 22, 2014, two other company executives also held 55,500 nonvoting membership units each in KA Medical.

The Funding Trust made approximately $19 million in cash transfers to fund KA Medical's research and development. In exchange KA Medical executed 25 promissory notes payable to the Funding Trust

[*3] during Mr. Amplatz's lifetime and at least two more after his death. KA Medical made no payments of principal or interest on those notes and extended the due dates on 19 of them. The Estate alleges that KA Medical had no revenue from 2015 to 2018, sustained recurring losses, and consistently treated the promissory notes payable to the Funding Trust as bona fide debt.

On November 6, 2019, Mr. Amplatz passed away. Shortly thereafter, efforts began to sell KA Medical. On or around January 23, 2020, KA Medical representatives met with SealedBid Marketing, Inc. (SealedBid), a mergers and acquisitions brokerage. On May 3, 2020, KA Medical executed an Exclusive Right to Sell Engagement Agreement with SealedBid. On or around June 3, 2020, Merit Medical Systems, Inc. (Merit Medical), expressed interest in acquiring KA Medical. It made an oral offer of $10 million plus a 6% royalty for ten years, with potential upward adjustments of $1 million to $2 million. On July 15, 2020, Merit Medical entered into a nonbinding letter of intent to purchase all membership units of KA Medical for $15 million. On July 20, 2020, KA Medical received an appraisal from Value Consulting Group valuing the Estate's interest in KA Medical at zero and the promissory notes at $1 million as of May 6, 2020.

On August 6, 2020, Security Bank, as personal representative, filed the Estate's Form 706, selecting an alternate valuation date of May 6, 2020. The Form 706 reported the value of the Estate's membership units in the Medical Trust, which held KA Medical, as zero and reported the value of the promissory notes payable to the Funding Trust as $1 million. On or around November 6, 2020, both the Medical Trust and the two company executives with membership interests in KA Medical transferred all of their membership units to the Funding Trust, resulting in the Funding Trust's owning 100% of KA Medical's membership units. On November 6, 2020, Merit Medical and Security Bank entered into a Unit Purchasing Agreement, in which Merit Medical purchased all membership units in KA Medical from the Funding Trust for $15 million.

II.   *The Examination*

Respondent selected the Estate's Form 706 for examination and assigned the case to Estate Tax Legal Specialist Elizabeth Miller. At the conclusion of the examination, Ms. Miller determined that the gross valuation misstatement penalty under section 6662(h), the substantial estate or gift tax valuation understatement penalty under section

[*4] 6662(b)(5) and (g), and the negligence penalty under section 6662(b)(1) and (c) should apply. At that time, Supervisory Estate Tax Legal Specialist Meredith Curtis served as Ms. Miller's immediate supervisor.

In May 2023 Ms. Miller prepared a Civil Penalty Lead Sheet listing the section 6662 penalties. On May 8, 2023, Ms. Miller requested Ms. Curtis's approval of the penalties. On May 17, 2023, Ms. Curtis approved Ms. Miller's recommendation to assert penalties by signing the Civil Penalty Lead Sheet. That same day, Ms. Miller sent Ms. Curtis a Civil Penalty Approval Form, listing as the primary position the gross valuation misstatement penalty and, as alternative positions, the substantial estate or gift tax valuation understatement and negligence penalties. On May 17, 2023, Ms. Curtis approved Ms. Miller's recommendation to assert penalties by digitally signing the Civil Penalty Approval Form and returning it to Ms. Miller.

On June 21, 2023, Ms. Miller sent the Estate a preliminary examination report setting forth respondent's adjustments to the Estate's Form 706 and including a copy of the Civil Penalty Approval Form signed by Ms. Curtis. The preliminary examination report also included Form 886–A, Explanation of Items, providing statements for respondent's adjustments to the values of KA Medical and the promissory notes.

As to respondent's adjusted value of $15,145,000 for KA Medical, Form 886–A states:

> On November 6, 2020, the decedent's estate sold the decedent's interest in KA Medical, LLC to Merit Systems, Inc. for $15,145,000. The corrected value is based on the gross sale proceeds and working capital adjustment deposited into the Kurt A. Amplatz Funding Trust on November 9, 2020 and December 31, 2021.

As to respondent's adjusted value of zero for the promissory notes, Form 886–A states:

> I determined that the funds advanced by the decedent to KA Medical, LLC constituted contributions to the company's equity rather than debt. Accordingly, I have taken the value of the notes due decedent to zero.

[*5] In the alternative, I have determined that the fair market value of the promissory notes due decedent from KA Medical, LLC is their face value at death plus accrued interest pursuant to Treas. Reg. §20.2031-[4].

On June 28, 2023, the Estate emailed Ms. Miller requesting a written statement of respondent's valuation pursuant to section 7517 as to the valuation of KA Medical and the promissory notes no later than August 12, 2023 (45 days). Ms. Miller reviewed section 7517 and determined that the preliminary examination report complied with the statutory requirements. Ms. Miller did not communicate this determination to the Estate.

On July 17, 2023, respondent issued the Estate a Notice of Deficiency with respect to Form 706. The Notice of Deficiency included another Form 886–A, providing statements for respondent's adjustments to the values of KA Medical and the promissory notes. As to respondent's valuation of KA Medical, Form 886–A states: "We determined that the fair market value of the decedent's interest in KA Medical, LLC (Schedule G, Item 12) on the alternate valuation date is $15,145,000.00 rather than $0.00 as reported. Accordingly we increased the taxable estate by $15,145,000.00." As to respondent's valuation of the promissory notes, the Form 886–A states:

> We determined that the funds transferred by the decedent to KA Medical, LLC (Schedule G, Item 11) were contributions to the company's equity rather than debt as reported on the estate tax return. [W]e have reduced the reported value of the promissory notes as of the alternate valuation date to $0.00. Accordingly, we decreased the taxable estate by $1,000,000.00.

> Alternatively, we determined that the notes issued by KA Medical, LLC (Schedule G, Item 11) are included in the gross estate under Internal Revenue Code section 2033 and that it has not been established that the value of the note is less than the amount due. Consequently, the fair market value on the alternate valuation date, of the notes is $17,686,508.00 rather than $1,000,000.00 as reported. Accordingly, we increased the taxable estate by $16,686,508.00.

**[\*6]** The Notice of Deficiency also included a copy of the Civil Penalty Approval Form signed by Ms. Curtis.

III.   *Tax Court Proceedings*

On September 28, 2023, the Estate's Petition was timely filed. On October 26, 2023, a First Amendment to Petition was filed. On November 21, 2025, the parties filed Cross-Motions for Partial Summary Judgment, along with supporting Memoranda and Declarations.

The Estate argues it is entitled to summary judgment on two issues: (1) respondent should be precluded from asserting his valuation of KA Medical and certain related promissory notes because respondent failed to comply with the written statement requirement in section 7517 and (2) the Estate should not be liable for accuracy-related penalties under section 6662 because the Estate had reasonable cause and acted with good faith in valuing KA Medical and certain promissory notes. Respondent argues he is entitled to summary judgment because (1) he complied with section 6751(b)(1) as to the determined penalties under section 6662(b)(1), (5), (c), (g), and (h), and (2) he complied with the Estate's section 7517 request by issuing his preliminary examination report before the Estate's request and his Notice of Deficiency after it, or in the alternative, respondent does not forfeit the assertion of penalties, or any other aspect of this case, if it is determined that respondent failed to comply with section 7517.

On January 30, 2026, the Estate filed a Response to Respondent's Motion for Partial Summary Judgment, and respondent filed a Response to the Estate's Motion for Partial Summary Judgment. On February 20, 2026, respondent and the Estate each filed a Reply to the respective Responses. On March 3, 2026, respondent filed the expert report of Michael Lavelle of Appraisal Economics (Lavelle Report), signed on March 2, 2026, with respect to the valuation of KA Medical.

On March 13, 2026, the Estate filed a Motion for Leave to File First Supplemental Brief in support of its Motion for Partial Summary Judgment to address the impact of the Lavelle Report on respondent's compliance with section 7517. Thereafter, the Court filed the Estate's First Supplemental Brief in support of its Motion. On March 31, 2026, respondent filed a Response to the Estate's First Supplemental Brief. On April 16, 2026, the Estate filed a Motion in Limine to exclude the Lavelle Report and the testimony of Michael Lavelle, moving that the

**[\*7]** Court "preclude [r]espondent from introducing at trial any expert report, expert appraisal, expert testimony, or related valuation evidence concerning KA Medical, LLC and certain related promissory notes because [respondent] failed to comply with the mandatory requirements under [section] 7517 and now advances a newly proposed, contradictory valuation that lacks a reliable methodology and unduly prejudices [the Estate]." On April 20, 2026, respondent filed his Response to petitioner's Motion in Limine, stating that "compliance with section 7517 is irrelevant to the admissibility of an expert report." This case is set for trial at the Court's St. Paul, Minnesota, special trial session commencing May 12, 2026.

*Discussion*

I.     *Summary Judgment*

Under Rule 121(a)(1), either party can move for summary judgment on all or any part of the legal issues in controversy. *FPL Grp., Inc. v. Commissioner*, 116 T.C. 73, 74 (2001). Summary judgment is a tool that expedites litigation to avoid unnecessary and expensive trials. *Id.* This Court grants summary judgment if the movant shows there is no genuine dispute as to any material fact and they are entitled to a decision as a matter of law. Rule 121(a)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006); *Sundstrand*, 98 T.C. at 520.

To decide a summary judgment motion, we construe factual materials and inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Johnson*, 453 F.3d at 1112; *Sundstrand*, 98 T.C. at 520. If the moving party makes and properly supports its summary judgment motion, then the nonmovant cannot simply rest on the allegations or denials in the pleadings. Rule 121(d). Instead, the nonmovant must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. *Id.*; *see also Celotex*, 477 U.S. at 323; *Spear v. Dayton's*, 733 F.2d 554, 555 (8th Cir. 1984).

II.     *Penalty Approval Under Section 6751(b)(1)*

Section 6751(b)(1) requires that the initial determination of a penalty be personally approved in writing by the immediate supervisor of the individual making the determination. *See Wells Fargo & Co. v. United States*, 957 F.3d 840, 854 (8th Cir. 2020); *Graev v. Commissioner*, 149 T.C. 485, 492–93 (2017), *supplementing and overruling in part*

[*8] 147 T.C. 460 (2016). Supervisory approval need not appear on a specific form or document—it must only be a writing reflecting the supervisor's approval of the penalty. *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 16 (2020). "The natural place to look for an initial 'determination' of a penalty assessment is a document that formally communicates to the taxpayer a definite decision to assert penalties." *Id.* at 9. The Eighth Circuit has not addressed when supervisory approval is timely; however, other appellate courts hold that supervisory approval must occur either before the penalty assessment, or, if earlier, before the relevant supervisor loses discretion to approve it. *See, e.g., Swift v. Commissioner*, 144 F.4th 756, 770–71 (5th Cir. 2025), *aff'g* T.C. Memo. 2024-13; *Kroner v. Commissioner*, 48 F.4th 1272, 1278, 1279 n.1 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73; *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020); *Chai v. Commissioner*, 851 F.3d 190, 220 (2d Cir. 2017), *aff'g in part, rev'g in part* T.C. Memo. 2015-42.

Respondent moved for summary judgment on his compliance with section 6751(b). *See* Rule 121(a)(2). The Estate did not address respondent's section 6751(b) argument in its Response, Reply, or First Supplemental Brief in support of its Motion for Partial Summary Judgment. Given that the Estate did not file any type of response on this issue, we conclude that it has forfeited its opportunity to do so, and we could rule for respondent on that basis alone. *See* Rule 121(d). That said, respondent complied with section 6751(b)(1) under any standard thus far articulated by the courts, and he secured proper supervisory approval for all penalties asserted here.

On May 17, 2023, Ms. Curtis, Ms. Miller's immediate supervisor, approved the initial penalty determination in writing by signing the Civil Penalty Lead Sheet and the Civil Penalty Approval Form. That approval preceded respondent's first formal communication to the Estate regarding the penalties by approximately one month. Both documents satisfy the written approval requirement of section 6751(b)(1), and supervisory approval was timely because it occurred before the relevant communication to the Estate. *See Belair Woods*, 154 T.C. at 15–16. Finding no genuine disputes of material fact as to whether respondent met the procedural requirements of section 6751(b)(1), we will accordingly grant respondent's Motion for Partial Summary Judgment on this issue.

**[\*9]** III.    *Section 7517 Furnishing Statement on Request*

Section 7517 allows requests for a written statement from the Commissioner explaining the basis of his valuation for estate, gift, or generation-skipping tax purposes. I.R.C. § 7517(a). Section 7517 provides:

> Sec. 7517. Furnishing on request of statement explaining estate or gift valuation
>
> (a) General rule.—If the Secretary makes a determination or a proposed determination of the value of an item of property for purposes of the tax imposed under chapter 11, 12, or 13, he shall furnish, on the written request of the executor, donor, or the person required to make the return of the tax imposed by chapter 13 (as the case may be), to such executor, donor, or person a written statement containing the material required by subsection (b). Such statement shall be furnished not later than 45 days after the later of the date of such request or the date of such determination or proposed determination.
>
> (b) Contents of statement.—A statement required to be furnished under subsection (a) with respect to the value of an item of property shall—
>
>> (1) explain the basis on which the valuation was determined or proposed,
>>
>> (2) set forth any computation used in arriving at such value, and
>>
>> (3) contain a copy of any expert appraisal made by or for the Secretary.
>
> (c) Effect of statement.—Except to the extent otherwise provided by law, the value determined or proposed by the Secretary with respect to which a statement is furnished under this section, and the method used in arriving at such value, shall not be binding on the Secretary.

Section 7517 does not require a particular form or format, and no information disclosed in the statement is binding on the Commissioner. *See* I.R.C. § 7517(b) and (c); Treas. Reg. § 301.7517-1; *see also Minahan v. Commissioner*, 88 T.C. 492, 494 n.5 (1987). The statute's purpose is to encourage early resolution of valuation disputes. H.R. Rep. No. 94-1380, at 60–61 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 3356, 3414–15.

[*10] On June 21, 2023, respondent issued the Estate the preliminary examination report, which included a Form 886–A, setting forth respondent's adjustments to the values of KA Medical and the promissory notes. On June 28, 2023, after receiving respondent's preliminary examination report, the Estate requested a written statement of respondent's valuation pursuant to section 7517. Respondent did not respond to the Estate's section 7517 request. On July 17, 2023, within 45 days of the Estate's request, respondent issued the Notice of Deficiency, which included a Form 886–A, setting forth respondent's adjustments to the values of KA Medical and the promissory notes and respondent's updated alternative position for the value of the notes. After issuing the Notice of Deficiency, respondent did not respond to the Estate's section 7517 request.

The text of section 7517 is clear. Section 7517(a) requires the Commissioner to furnish his written statement "not later than 45 days after the later of the date of such request or the date of such determination or proposed determination." That is, the Commissioner must respond (1) after the taxpayer's request and (2) within 45 days of the request or the determination. Respondent had two opportunities here to comply with section 7517. First, after the Estate submitted its section 7517 request on June 28, 2023, respondent could have responded to that request within 45 days. Assuming we agreed that respondent's previously issued preliminary examination report constituted an explanation for purposes of section 7517(b)(1), we might have considered a simple response to the Estate notifying it of incorporation by reference to be responsive to the Estate's request. *See Estate of Rickman v. Commissioner*, T.C. Memo. 1995-545, 1995 WL 679776, at *4 (noting that a revenue agent's report was provided in response to a section 7517 request). Respondent did not send anything similar. Second, respondent could have responded to the Estate's request within 45 days after issuing the Notice of Deficiency on July 17, 2023, but respondent did not do so. Respondent asks the Court to find that either the preliminary examination report, issued before the Estate's request, or the Notice of Deficiency, issued within 45 days of the Estate's request, substantively satisfied the written statement requirement in section 7517. However, the preliminary examination report cannot satisfy section 7517 because it was issued before the Estate's request, and we need not determine whether the Notice of Deficiency satisfies section 7517.

Even assuming arguendo that respondent did not comply with section 7517, the remaining question is what remedy, if any, is available to the Estate. As a consequence of respondent's noncompliance, the

**[\*11]** Estate asks us to preclude respondent from asserting the value of Mr. Amplatz's estate determined in the Notice of Deficiency— $15,145,000. Precluding respondent from asserting his determined value would leave us with the Estate's asserted value of zero, rendering the Notice of Deficiency essentially hollow. We decline to grant that relief. The Estate cites no authority to support its requested relief, and we are not aware of any such authority. *See Estate of Rickman v. Commissioner*, 1995 WL 679776, at \*8. We presume the "legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). By its plain text, section 7517 does not suggest any consequence for noncompliance, let alone the harsh result the Estate seeks. *See Estate of Rickman v. Commissioner*, 1995 WL 679776, at \*8.

We have previously declined to impose severe consequences for noncompliance where the statute itself supplies no enforcement mechanism. *See Rochelle v. Commissioner*, 116 T.C. 356 (2001), *aff'd per curiam*, 293 F.3d 740 (5th Cir. 2002). In *Rochelle*, 116 T.C. at 358, the Commissioner issued a Notice of Deficiency under sections 6212 and 6213(a), but he did not stamp on the Notice the specific calendar date by which the taxpayer could last timely file a petition. The Internal Revenue Service Restructuring and Reform Act of 1998 (RRA), Pub. L. No. 105-206, § 3463(a), 112 Stat. 685, 767, requires the Commissioner to specify the last possible date on which a taxpayer can file a timely petition with this Court, but the statute contains no enforcement mechanism for failing to do so. *Rochelle*, 116 T.C. at 358–59. The taxpayer in *Rochelle* raised the Commissioner's technical noncompliance with RRA § 3463(a) as his argument for invalidating the Notice of Deficiency. *Rochelle*, 116 T.C. at 358. We held in that case that the Commissioner's failure to comply with the statutory mandate in RRA § 3463(a) did not require invalidating the Notice of Deficiency. *Rochelle*, 116 T.C. at 361. Further, we noted that where Congress did not specify what consequence was to follow from the Commissioner's noncompliance, we declined to impose one absent express statutory direction. *Id.*

Like RRA § 3463(a), section 7517 contains no enforcement mechanism. In *Estate of Rickman v. Commissioner*, 1995 WL 679776, at \*8, we recognized this aspect of the statute's structure and held that, without express terms setting forth otherwise "we will not graft . . . extreme remed[ies] onto [section 7517]." Precluding respondent from asserting his determined value in the present case is an extreme remedy comparable to the one we declined to grant in *Estate of Rickman*, and

[*12] we will not read it into the statute today. *See id.* Because we decline to preclude respondent from asserting his valuation determination, a tax deficiency remains at issue, and it follows that the penalties respondent determined in the Notice of Deficiency remain at issue as well.

The Estate's Motion suggests that it is prejudiced by respondent's failure to respond under section 7517. It is not clear to the Court that any prejudice exists, so we do not find the Estate's claim of prejudice to be persuasive. In any event, even if respondent did not provide a satisfactory response under section 7517, there was no effect on the Estate's settlement opportunities or trial preparations, and the Estate may obtain any other necessary information through discovery. With respect to an expert appraisal under section 7517(b)(3), the statute does not contemplate that the Commissioner employ an expert appraisal in all cases. Section 7517(b)(3) refers to "a copy of *any* expert appraisal made." (Emphasis added.) Respondent is not required to and cannot produce information to the Estate that does not exist at the time.[2]

We hold that precluding respondent from asserting his determined value, the relief the Estate seeks here, is not an available remedy under section 7517. Thus, with respect to section 7517, we will deny both the Estate's Motion for Partial Summary Judgment and respondent's Motion for Partial Summary Judgment.

---

[2] The Estate's First Supplemental Brief and Motion in Limine to exclude the Lavelle Report and the testimony of Michael Lavelle claim that the Estate is prejudiced by respondent's Lavelle Report, signed on March 2, 2026, and filed with this Court on March 3, 2026, with respect to the valuation of KA Medical. The Lavelle Report purports to "appraise the fair market value of certain debt and equity interests in [KA Medical] as of May 6, 2020 (the 'Valuation Date'), under certain assumptions as described [in the report]." The Estate submitted its section 7517 request on June 28, 2023, at which time the Lavelle Report did not exist for respondent to disclose. The Estate further claims that information in the Lavelle Report contradicts respondent's explanation for the valuation determined in the Notice of Deficiency. The Estate is free to continue to voice its concerns regarding the Lavelle Report at trial. Section 7517 does not require that valuations disclosed in response to a taxpayer's request align with any future appraisals prepared for trial. Even if the Lavelle Report purported to be a proposed valuation provided under section 7517, such proposed valuation is expressly not binding. *See* I.R.C. § 7517(c). Accordingly, the Lavelle Report has no effect on respondent's compliance with section 7517. We likewise do not find that the arguments set forth in the Estate's Motion in Limine have any additional effect on respondent's compliance with section 7517.

**[\*13]** IV.    *Section 6664(c) Reasonable Cause Exception*

A taxpayer may avoid section 6662 penalties by showing there was reasonable cause for the underpayment and the taxpayer acted in good faith. I.R.C. § 6664(c)(1); *Higbee v. Commissioner*, 116 T.C. 438, 448–49 (2001). We determine whether reasonable cause exists on a case-by-case basis, considering all pertinent facts and circumstances. Treas. Reg. § 1.6664-4(b)(1); *see also Patel v. Commissioner*, Nos. 24344-17, et al., 165 T.C., slip op. at 35 (Nov. 12, 2025). "Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to the disputed item." *Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 98 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002). Good faith reliance on the advice of an independent, competent professional as to the tax treatment of an item may satisfy this requirement. *Id.* (citing *United States v. Boyle*, 469 U.S. 241 (1985)). To reasonably rely on a qualified professional's advice, the taxpayer must show that (1) the adviser was a competent professional with sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. *Id.* at 99.

The Estate argues it relied in good faith on a qualified, independent appraisal from Value Consulting Group for its valuation of KA Medical and the promissory notes. In support, the Estate provided, among other items, the Declarations of John Oslund, the former president of KA Medical, and Christopher A. Yetka, the Estate's counsel in this case. The Estate also provided a confidential appraisal report of KA Medical prepared by Value Consulting Group on July 20, 2020, to show reasonable reliance on the advice of a qualified independent appraiser. Respondent argues that the Estate's reasonable cause defense is facts-and-circumstances dependent. He further asserts that there are genuine disputes as to whether the Estate fully disclosed information to Value Consulting Group and whether the Estate could have reasonably relied on Value Consulting Group's valuation given the purchase negotiations for KA Medical.

Respondent has demonstrated there are disputes of material fact concerning the Estate's reasonable cause defense that preclude summary judgment on this issue. *See Abrahamsen v. Commissioner*, 142 T.C. 405, 408 (2014) ("[The taxpayer's] ability to satisfy the section 6664(c)(1) 'reasonable cause' exception to the accuracy-related penalty presents a triable issue that precludes summary judgment."); *David & Barbara Green 1993 Dynasty Tr. v. Commissioner*, T.C. Memo.

**[\*14]** 2025-100, at \*18 ("[W]e conclude a material dispute of fact exists with respect to reasonable cause. . . . [W]e decline to make at this stage of the proceedings [a summary judgment] ruling . . . ."). Reasonable cause under section 6664(c)(1) is inherently fact-intensive, and the Estate's ability to satisfy its requirements here presents a triable issue. We therefore will deny the Estate's Motion for Partial Summary Judgment with respect to its reasonable cause defense.

V.     *Conclusion*

In sum, we find that (1) respondent complied with section 6751(b)(1) by securing timely supervisory approval for the determined penalties; (2) we need not decide whether respondent complied with section 7517; (3) respondent is not precluded from asserting his valuation of KA Medical and certain promissory notes as listed in the Notice of Deficiency; and (4) the Estate's reasonable cause defense to the imposition of section 6662 penalties is an issue that should be resolved at trial. Accordingly, we will deny the Estate's Motion for Partial Summary Judgment, and we will grant in part and deny in part respondent's Motion for Partial Summary Judgment, as stated above.

To reflect the foregoing,

*An appropriate order will be issued.*